IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

MIDDLE DISTRICT—HARRISBURG 1860.

## Kissecker *versus* Monn.

36   313
38SC ¹169

If one who has a right, by license, to enter upon the land of another, for a lawful purpose, exceed his license or abuse his authority, he is liable for the consequential damages arising therefrom in an action of trespass *quare clausum fregit.*

If a party who possesses a license to enter on the land of another, take down a gate erected thereon, to enable him to enter, and neglect to restore it to its place, whereby his swine are enabled to trespass upon the plaintiff's land, he is liable in trespass for the damages thereby occasioned.

Where there are several counts, all of which are good, it is not error to enter judgment generally, though the evidence may have been applicable to only some of them.

ERROR to the Common Pleas of *Franklin county.*

This was an action of trespass *quare clausum fregit* by Conrad Monn against John Kissecker.

David Fullerton was the owner of a large tract of land on which was erected a grist mill. In 1808, he conveyed a portion of the tract to Philip Snyder, under whom the plaintiff claimed title, reserving the free use and privilege of the ground over which the water in the tail-race flowed to his mill, so far as the said race ran through the land conveyed.

On the 24th April 1818, Fullerton conveyed the remainder of the tract to Nicholas Kissecker, the defendant's father ; and upon his decease, under proceedings in partition, the mill and 102 acres

of the tract were adjudged to the defendant. From the date of the grant to Snyder, the defendant, and those under whom he claimed, enjoyed and exercised the right to enter upon the land so granted to Snyder, for the purpose of cleaning the tail-race of his mill.

In 1858, the defendant entered upon the plaintiff's land, to clean the tail-race, and to enable him to do so removed a water-gate erected across it by the plaintiff, which he neglected to replace, and in consequence, the defendant's swine were enabled to enter upon the plaintiff's meadow, and injure his grass; and for this injury the present action was brought.

The court below (KIMMELL, P. J.) in answer to points presented by the plaintiff and defendant, instructed the jury as follows:—

" In this action the plaintiff claims to recover damages from the defendant for removing the water-gate across the tail-race flowing through the plaintiff's land, whereby the defendant's hogs, and others, had access to the plaintiff's meadow, rooting it up and destroying the grass growing there. The lands of these parties, at one time, were owned by David Fullerton, and when he sold by deed to Philip Snyder, under whom the plaintiff holds, in 1808, the right to this tail-race was reserved. In the agreement produced, endorsed on the deed referred to, Snyder declares that, before the execution and delivery of the deed, it had been agreed between the parties thereto, ' that David Fullerton, his heirs, executors, administrators, and assigns, shall have and enjoy the free use and privilege now enjoyed of the ground through which the water passes, through from the tail-race of his, the said David Fullerton's mill, so far as the same extends through the premises as above conveyed to the said Philip Snyder.'

" The title to the mill property is now vested in the defendant, and he alleges that he and those under whom he claims, have had the ' free use and privilege' of the tail-race from the date of the deed to the present, and that the owners of the mill have entered upon the land, over which it runs, from time to time, with harrows, ploughs, and horses, for the purpose of cleaning the race, whenever it suited their purpose.. Under this agreement, the defendant had an undoubted right to enter through and upon the plaintiff's land ' to remove obstructions from natural and artificial causes' in the race, whenever it became necessary, as he and those under whom he claims have enjoyed the right for the last twenty-one years.

" The plaintiff does not complain that the defendant exceeded his license in the flow of the water, or the enlargement of the race, nor is it pretended, that he had not the right to enter the lands of the plaintiff for all purposes connected with the full enjoyment of the race, but the plaintiff's counsel allege that he abused his authority after he was on the premises, in this, that he refused to

[Kissecker *v.* Monn.]

restore the fence after the work at the water-course was done. It seems, that this gate was put up in 1848, and that before that time there was a fence of poles at that point, and that both formed part of the enclosure to the meadow.

"The defendant does not deny having taken away the gate, and we instruct you that, under the agreement, he had the right to take it down, to enable him to clean the race, as was the custom of the owners of the mill. But in doing so, he was bound to respect the rights of the owner of the soil, doing as little injury as possible, and using the land no further than was necessary to the full enjoyment of the right. He alleges that it was necessary to remove the gate, so that the horses, ploughs, and harrows might pass up and down the body of the race, and this seems to be admitted; but was it necessary also, that the gate should be kept away? This is not pretended; but the defendant says it was not his business to restore it again to its former position. The defendant had the right, under the grant, to enter upon the lands of the plaintiff, at any point that might be deemed necessary to reach the race. Suppose he had made his entry at the bars, about which there was some parol agreement; or through the fence by laying it down, was he bound to close up the opening again? If he was not, it was in his power to make a common of the plaintiff's meadow, for his own and other people's swine and cattle. It will scarcely be pretended that this was a part of his privileges; the gate was only part of the enclosure, and the obligation to close it was as imperative as to close the fence at any other point. If the gate had obstructed the free flow of the water, this would have constituted a sufficient justification for the removal; but this is not alleged. It was, therefore, the duty of the defendant to restore the gate when he finished cleaning the race; any other rule would place the plaintiff's meadow at the defendant's mercy.

"But the question is, can the plaintiff recover in this form of action? The defendant says he cannot, because he was authorized, under the grant, to enter; and that having entered by license, he cannot be held for consequential damages, in an action of trespass *quare clausum fregit*. That if the plaintiff has a right of action, it should have been case. We have already said that the defendant had the right of entry, and there can be no recovery here, unless he exceeded the license, or abused his authority. If he did, he must be treated as if he had entered without license. If the defendant took down the gate, and refused or neglected to restore it to its place again, after the necessity for its removal was gone, and his swine entered the meadow at that point, and committed the injuries complained of, then he did abuse his authority, and the plaintiff is entitled to recover. The jury will estimate the damages."

[Kissecker *v.* Monn.]

To this charge the defendant excepted; and a verdict and judgment having been rendered for the plaintiff for $7.50, the defendant sued out this writ, and here assigned the same for error; and also that the court erred in taking the verdict and entering the judgment upon all of the counts in the declaration, the evidence being applicable only to the second and third counts. The first was the usual common count in trespass *quare clausum fregit;* the second and third set forth the facts of the case with particularity.

*Reilly & Sharp* for the plaintiff in error.—The court erred in charging that it was the defendant's duty to replace the water gate. The defendant had a right to enter, and the erection of the water gate was a private nuisance which it was lawful for the defendant to abate. Drake *v.* Rogers, 3 *Hill* 604; Brill *v.* Flagler, 23 *Wend.* 354; Dyer *v.* Depui, 5 *Wh.* 596; Cronister *v.* Weise, 8 *Watts* 218; Lancaster Turnpike Co. *v.* Rogers, 2 *Barr* 114; Knight *v.* Abert, 6 *Id.* 472; Philiber *v.* Matson, 2 *Harris* 306; Beach *v.* Schoff, 4 *Casey* 195; Jenkins *v.* Fowler, 12 *Harris* 308; Peter *v.* Hunsiker, 4 *Casey* 208.

But if there can be a recovery, case and not trespass was the proper remedy. Cotteral *v.* Cummins, 6 *S. & R.* 349; Smith *v.* Rutherford, 2 *Id.* 358; Spencer *v.* Campbell, 9 *W. & S.* 32; Farmers' Bank *v.* McKinney, 7 *Watts* 214; Deitrich *v.* Berk, 12 *Harris* 470; Addleman *v.* Way, 4 *Yeates* 218; Ward *v.* Taylor, 1 *Barr* 238; Greber *v.* Kleckner, 2 *Id.* 291; Lewis *v.* Carsaw, 3 *Harris* 34. A mere *nonfeasance* will not make one a trespasser *ab initio :* Six Carpenters' Case, 1 *Smith's Lead. Cas.* 131; Hale *v.* Clark, 19 *Wend.* 498; Gardner *v.* Campbell, 15 *Johns.* 401; Boults *v.* Mitchell, 3 *Harris* 379; Edelman *v.* Yeakel, 3 *Casey* 26; Wilson *v.* Ellis, 4 *Id.* 240; Cushing *v.* Adams, 18 *Pick* 110–14; Dumont *v.* Smith, 4 *Denio* 319; Van Brunt *v.* Schneck, 13 *Johns.* 414.

*Nill & Kennedy* and *J. H. McCauley*, for the defendant in error.—The distinction is well settled, however judges may have differed in its application to particular cases, that if the injury be occasioned by the act of the defendant, or he be the immediate cause of it, trespass *vi et armis* is the proper remedy. Darlington *v.* Painter, 7 *Barr* 473; Trauger *v.* Sassaman, 2 *Harris* 514; Fitzwater *v.* Stout, 4 *Id.* 22; Dolph *v.* Ferris, 7 *W. & S.* 367; Rossel *v.* Cottom, 7 *Casey* 525; Paff *v.* Slack, 7 *Barr* 254; Commonwealth *v.* Fourteen Hogs, 10 *S. & R.* 398.

PER CURIAM.—The charge of the learned Judge of the Common Pleas is so well adapted to the case, and so just in its principles,

that we do not feel called upon to do more than express our approval of it. It is quite evident, that the verdict is founded on the second and third counts; but the first is good, and it does not hurt the defendant, that the judgment was entered on all of them.

Judgment affirmed.