## J. B. SHIFFER v. J. A. BROADHEAD ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF LUZERNE COUNTY.

Argued April 15, 1889—Decided May 6, 1889.
[To be reported.]

1. Under § 1, act of June 22, 1871, P. L. 1363, supplemental to the act of March 23, 1870, P. L. 540, extending to Wayne and Luzerne counties the Bradford county reference act of April 6, 1869, P. L. 725, the Court of Common Pleas may recommit the report of a referee for the purpose of taking additional testimony to enable him to report upon a material fact undetermined.

2. Under the act of September 30, 1791, 3 Sm. L. 59, and subsequent acts, justices of the peace are authorized to receive proof of the execution of deeds and other instruments of writing, by the oath of a subscribing witness, whether the grantor be living or not, and the record of such instrument so duly proved is competent evidence.

3. Though the defendant in an action for the cutting down and conversion of timber trees, under § 3, act of March 27, 1824, 8 Sm. L. 283, have the right to enter upon the plaintiff's lands to cut certain trees under a contract, yet if he cut down and convert other trees which he has no right to cut under his contract, as to such trees he becomes a trespasser and is liable under said act.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and MITCHELL, JJ.

No. 47 January Term 1889, Sup. Ct.; court below, No. 22 May Term 1885, C. P.

On March 4, 1885. J. B. Shiffer brought trespass against John A. Broadhead, Abram Bellas and six others, to recover treble damages for the cutting down and conversion of growing timber trees, under § 3, act of March 29, 1824, 8 Sm. L. 283. The defendants pleaded not guilty, and on May 7, 1886, the cause was referred by agreement of counsel to *Mr. O. F. Nicholson*, under the provisions of the act of March 23, 1870, P. L. 540 (extending to Wayne and Luzerne counties the Bradford county reference act of April 6, 1869, P. L. 725), and the supplementary act of June 22, 1871, P. L. 1363.

At the hearing before the referee it was made to appear that on January 24, 1885, J. B. Shiffer, the plaintiff, became the owner, by purchase from one Gilbert Shiffer, of a tract of timber land in Buck township, whereon it was alleged that the defendants, in the fall of 1884 and the winter following, committed the trespass complained of. The defendants, in answer to the case of the plaintiff, offered in evidence a record made on November 28, 1884, in Deed Book No. 247, p. 493, which was as follows:

Articles of Agreement made and entered into this 18th day of October, 1867, between John A. Broadhead, of the one part, and Gilbert Shiffer, of the other part, as follows: The said Shiffer hereby covenants and agrees to sell said Broadhead all the white pine and hemlock timber (and no other) now being, standing or growing upon that certain lot of land situate in Buck township, known as the Broadhead lot, (with all the rights and privileges of ingress and egress to and from the same for the purpose of cutting and hauling the same), for the sum of five hundred dollars. . . . .

In witness whereof the said parties have hereunto set our hands and seals the day and year aforesaid.

GILBERT SHIFFER. [SEAL.]<br>
J. A. BROADHEAD. [SEAL.]

Sealed and delivered in presence of

A. B. WINDER.

Luzerne County, ss:

Be it remembered, that on the 27th day of November, 1884, before me, an Alderman of the city of Wilkes-Barre and ex-officio Justice of the Peace, in and for said county, personally came A. B. Winder, the subscribing witness to the above agree-

ment, and being duly sworn according to law, doth depose and say, that he was present and did see the above-named Gilbert Shiffer seal, and as his act and deed, deliver the said agreement, and that he, the said A. B. Winder, did thereupon subscribe his name as a witness to the same.

In testimony whereof I have hereunto set my hand and seal the day and year first above written.

A. B. WINDER,

Affirmed and subscribed before me this 28th November, 1884.

W. S. PARSONS, [SEAL.]<br>Alderman.

The offer of said record was objected to by the plaintiff, upon the ground that it did not appear in the certificate of probate, either that the grantor in the instrument was dead, or could not be had for the purpose of acknowledging it, and the record of the same was therefore not notice to a subsequent purchaser and was void. The referee admitted the offer, reserving the question as to its competency.

The referee made a report of his conclusions of fact and of law on November 5, 1886, filing therewith certain exceptions to his report by the plaintiff and by the defendants. Two of the conclusions of fact in said report were as follows :

" 10. That from actual measurements made on the 10th and 12th days of July, 1886, of the stumps of the trees cut in February, 1885, by said defendants," there were 383 trees of specified ages and diameters.

" 11. And that from said measurements made in July, 1886, from stumps of timber trees cut in February, 1885, the diameter of trees at the making of contract between Gilbert Shiffer and John A. Broadhead on the 18th day of October, 1867, cannot be found as a conclusion of fact by the referee."

One of the exceptions filed by the defendants, was,

" 5. The referee erred in his tenth conclusion of fact in not reporting from the evidence the diameter of each tree in 1867, when the contract in writing was made, and that he is unable under the evidence to give the diameters of the trees as they stood growing upon the Broadhead tract in 1867."

The foregoing exception, with the others filed, was argued, and on April 22, 1887, the court, WOODWARD, J., recommitted the cause to the referee, " for the purpose of ascertaining, as

nearly as possible, the size and diameter and age of the timber trees in dispute, at the date of the contract." Subsequently, the plaintiff denying the power of the court to make this recommittal, a re-argument of the foregoing exception was had, and on October 3, 1887, the court, WOODWARD, J., filed an opinion and decree, which in part was as follows:

It is a well known fact that the age of a tree is readily ascertained by counting from the centre to the circumference of a cross cut or section of a tree, the successive rings formed annually one by one as the tree grows. There is no other method of ascertaining the age of a tree with accuracy, and in all cases where it becomes important to decide upon the age, growth and probable diameter of a tree at any given time, it is customary to count off from each side of the tree, beginning at the outside, the number of growths formed since the date in question. The growths that are left after deducting the number thus counted off, will give the age and size of the tree at the required date.

Upon the trial before the referee the defendants showed the age of the trees in question. They also showed the diameter of the trees as they were found in 1885. They then asked the referee to find that all the trees shown to have been twenty-four years of age and upwards in 1867 must of necessity have been timber trees at that time. In other words, the referee was asked to adopt a formula or rule which would enable him to work out the problem of the diameter of the trees in 1867, by a mathematical calculation, rather than by an actual count. This the referee declined to do, and perhaps correctly, for the reason that the plan which he was asked to adopt, assumed as a fact, that the growth of each year had been equal and uniform. Why the witnesses were not asked to make the actual count, and thus be prepared to testify with certainty upon the vital question involved in the case, we are at a loss to understand. The truth and justice of the case require that the referee and the court shall be informed on this subject, and the means for furnishing this information are shown by the evidence to exist and to be readily obtainable. The finding of the referee on this subject is as follows: " And that from said measurements made in July, 1886, from stumps of timber trees cut in February, 1885, the diameter of trees at the making of contract between Gil-

bert Shiffer and John A. Broadhead on the 18th day of October, 1867, cannot be ascertained and found as a conclusion of fact by the referee." To dispose of this case without a definite finding as to the main and almost the only question involved in it, and that too, when the evidence upon that question is within easy reach, would be unjudicial, if not absurd.

We adhere to the order made by us on April 22, 1887, and recommit the report to the referee for the purpose therein stated.

At the second hearing before the referee, when the defendants proceeded to offer additional testimony upon the subject then for investigation, the plaintiff objected to the jurisdiction of the referee to hear and pass upon the same, for the reasons : (1) That the order of court made on April 22, 1887, and afterwards affirmed, did not authorize the introduction of new or additional testimony. (2) That if said order did contemplate the introduction of new or additional testimony the court had no authority to make the same.

The referee overruled the objection; exception.

The second report of the referee was filed on January 7, 1888. By this report certain conclusions of fact were as follows :

8. That in the fall or winter of 1884, the said John A. Broadhead made a verbal contract with Abram Bellas, one of the defendants, as follows : " He, the said Bellas, is to cut and stock into the Lehigh river a lot of white pine logs from the said Broadhead lot at five dollars per thousand feet, 'gallop measure.'" That pursuant to said verbal contract the said Abram Bellas did, on or about the 12th day of February, 1885, with others the defendants, (excepting the defendants Roland Bellas and Jacob Sax), enter upon the said Broadhead lot, the property of the plaintiff, and without the consent of the owner, and between that time and the fifth day of March, 1885, did cut down, remove and carry away from the said Broadhead lot and stock into the Lehigh river forty-nine thousand and seventy-one feet of white pine timber, log measure, and that the market value of such logs on the stump was three dollars and fifty cents per thousand feet, or one hundred and seventy-one dollars and twenty-five cents, and converted the same to their use.

9. That of the said forty-nine thousand and seventy-one feet of white pine timber in the log mentioned in the last before

conclusion of fact, No. 8, there were sixty-nine trees ten inches and upwards in diameter at the top of a log twelve feet long, first cut from the stump, which together would make thirteen thousand feet of lumber, the market value of which in the stump was three dollars and fifty cents per thousand feet, or forty-seven dollars and twenty-five cents. And that there were of the same forty-nine thousand and seventy-one feet of white pine timber, in the log, three hundred and fourteen other trees measuring less than ten inches in diameter at the top of a log twelve feet long, first cut from the stump, which would make thirty-six thousand and seventy-one feet of lumber, the market value of which in the stump was three dollars and fifty cents per thousand feet, or one hundred and twenty-four dollars and fifty cents. And that the said diameter above given is the diameter of the several trees mentioned as it existed and was in 1867, when the said written contract between Gilbert Shiffer and John A. Broadhead was entered into, ascertained from actual measurement of the stumps of the same trees cut in 1885, deducting from the whole number of annual rings formed, seventeen of the outer rings, and then measuring the diameter of the inner portion remaining; such latter measurement giving and being the diameter taken and received by the referee as the true diameter in 1867 of the trees in controversy, cut in 1885.

The conclusions of law of the referee were inter alia:

1. That the contract of 18th of October, 1867, between Gilbert Shiffer and John A. Broadhead was duly proved on the 27th day of November, 1884, although the certificate of probate on said contract does not set forth either that Gilbert Shiffer, the grantor, is dead or could not appear, and although the grantor was a resident of Luzerne county during the period intervening between the execution of the contract on 18th of October, 1867, and its probate of 27th November, 1884.

2. That the leaving of said contract with the certificate of probate thereon indorsed for record with the recorder of deeds for Luzerne county and the due recording of the same in the proper office on the 28th day of November, 1884, was constructive notice to a subsequent purchaser of the vendee's rights under the contract.

\* \* \* \* \* \* \* \*

That the written contract of 18th October, 1867, between Gilbert Shiffer and John A. Broadhead must be and is construed to have been entered into with their knowledge of the general custom then there prevailing, that the minimum size of white pine timber trees then standing and growing, was that of ten inches in diameter at the top end of a log twelve feet in length, the first cut from the butt, and that in the absence of a fixed size being limited by the contract, the general custom of the particular business of lumbering in the region where contract was to be enforced, will prevail to control and limit its construction in accordance therewith. And that the custom as found in the referee's conclusion of fact number thirteen appearing to be a good custom and not conflicting with the settled rules of law nor go to defeat the essential terms of the contract, must control its construction of the meaning of the language used: "All the white pine and hemlock timber now growing or standing," to indicate and mean only that which would measure ten inches in diameter at the top end of a log twelve feet long, first cut from the butt.

That as the defendants' right of entry upon the Broadhead tract to cut and remove that portion of the white pine timber which in the tree would measure ten inches in diameter at the top of a twelve foot log, first cut from the butt, was not determined at the time of the entry thereon by them, as claimed in this case, the plaintiff is not entitled to recover against the defendants in the present form of action. And in the event of no exceptions being filed hereto, the prothonotary is directed to enter judgment hereon in favor of defendants and against the plaintiff, of no cause of action.

All of which is respectfully submitted.

To this report of the referee, the plaintiff filed exceptions, in substance as follows:

1. The order of court directing that further or additional testimony be taken, respecting the size of the trees in controversy, is void, and all proceedings had pursuant thereto are illegal.[1]

2. The referee erred in holding that the execution of the written agreement was duly proved, and the record thereof constructive notice to the plaintiff.[2]

Arguments.

3. The referee erred in holding that the plaintiff was not entitled to recover, and in directing that judgment be entered in favor of the defendants.[3]

These exceptions having been argued, they were overruled on September 17, 1888, the court, WOODWARD, J., filing no opinion, and judgment was entered in favor of the defendants in accordance with said report. Thereupon the plaintiff took this writ and assigned as errors:

1–3. The overruling of the plaintiff's exceptions.[1 to 3]

*Mr. F. M. Nichols*, for the plaintiff in error:

1. The statute clothes the referee with the same power that is given to a jury, provides that the trial shall be conducted in the same manner "as a trial by the court and jury," and the decision of the referee "shall be given and may be excepted to and reviewed in like manner as though tried by the court with a jury, but not otherwise." All the cases in which the power of the referee and the effect of his conclusions have been passed upon, declare that the report of the referee is regarded in the same light as the verdict of a jury; it will neither be amended, recommitted, nor set aside, except for plain mistake or palpable abuse of power, apparent on its face, or proved affirmatively by the exceptant: Brown v. Dempsey, 95 Pa. 243. The supplemental act of June 22, 1871, P. L. 1363, provides: "Reserving to the court, however, the power of committing the *report* again to the referee, should justice require it." How is it possible to extract from this language a warrant for the authority to receive further and additional testimony?

2. By an examination of § 2, act of May 28, 1715, 1 Sm. L. 94; § 2, act of February 24, 1770, 1 Sm. L. 307; §§ 1, 4, act of March 18, 1775, 1 Sm. L. 422; § 9, act of September 30, 1791, 3 Sm. L. 59; § 1, act of March 18, 1814, 6 Sm. L. 144, it is shown that both the present method of proving the execution of deeds and the authority of justices of the peace to receive and certify the same, originated in the act of May 28, 1715. All the subsequent legislation touching the same subjects is supplemental to this act. Under the acts referred to, unaffected by subsequent legislation, justices of the peace could not take acknowledgments or receive proof of the execution of any instruments other than "all bargains and sales, deeds

and, conveyances of lands, tenements and hereditaments," nor of such deeds executed by married women, where the grantor and the witnesses to the same were dead. Where a deed is recorded without a proper probate, it is no evidence of notice to a subsequent purchaser: Simon v. Brown, 3 Y. 186; Heister v. Fortner, 2 Binn. 40; Green v. Drinker, 7 W. & S. 440; McKean v. Improvement Co., 35 Pa. 269.

*Mr. William S. McLean,* for the defendants in error:

1. In his first report, the referee had not found a fact which the court had questioned, but he refused to find a material fact, giving as his reason his inability to find the same from the evidence. The court simply said, perhaps this is so, but justice requires, in order that the case may be disposed of upon its merits, that you take additional evidence and find and report the fact, and for that purpose we commit the report back to you. The court had power so to do under § 1, act of June 22, 1871, P. L. 1363.

2. Under the act of March 18, 1775, 1 Sm. L. 422, deeds proved by one or more of the subscribing witnesses before one of the judges of the Supreme Court, or before one of the justices of the Court of Common Pleas where the lands lie, and recorded before the proving and recording of the deed under which a subsequent purchaser shall claim, shall be valid; and under the act of September 30, 1791, 3 Sm. L. 59, justices of the peace have the power to receive the proof of deeds in the same manner as the justices of the Court of Common Pleas have under the act of 1775. By the terms of § 4, act of March 18, 1775, 1 Sm. L. 424, the fact of the death of the grantor, or of the subscribing witnesses, or that the same cannot be had, is set forth in the certificate, only when proof is made by any person not a grantor or subscribing witness.

OPINION, MR. JUSTICE STERRETT:

There was no error in recommitting the report of the referee for the purpose of taking additional testimony in relation to the size of the trees in controversy. The supplementary act of June 22, 1871, P. L. 1363, referring to the provision for filing exceptions, etc., declares "It shall be the duty of the Court of Common Pleas to hear and decide upon all exceptions so filed

to the report of the referee, reserving to the court, however, the power of committing the report again to the referee should justice require it." The power thus reserved is an ample warrant for such action of the court as is complained of in the first specification. Indeed, the exercise of that power is sometimes necessary to prevent a miscarriage of justice.

The agreement referred to in the second specification was sufficiently proved to make the record thereof competent evidence. Under the act of 1791 and subsequent acts, justices of the peace are authorized to receive proof of deeds and other instruments of writing in the same manner as judges of the Supreme Court or Court of Common Pleas under the act of March 18, 1775.

The first and second specifications of error are not sustained.

The third specification involves a question of more importance. In his second report (conclusions of fact, paragraph nine), the learned referee finds as follows, viz.: " 9. That of the said forty-nine thousand and seventy-one feet of white pine timber in the log, mentioned in the last before conclusion of fact No. 8, there were sixty-nine trees, ten inches and upwards in diameter at the top of a log twelve feet long, first cut from the stump, which together would make thirteen thousand feet of lumber, the market value of which in the stump was three dollars and fifty cents per thousand, or forty-seven dollars and twenty-five cents. And that there were of the same forty-nine thousand and seventy-one feet of white pine timber in the log, three hundred and fourteen other trees, measuring less than ten inches in diameter at the top of a log twelve feet long, first cut from the stump, which would make thirty-six thousand and seventy-one feet of lumber, the market value of which in the stump was three dollars and fifty cents per thousand feet, or one hundred and twenty-four dollars and fifty cents. And that the said diameter above given is the diameter of the several trees mentioned as it existed and was in 1867 when the said written contract between Gilbert Shiffer and John A. Broadhead was entered into, ascertained from actual measurement of the stumps of the same trees cut in 1885, deducting from the whole number of annual rings formed, seventeen of the outer rings, and then measuring the diameter of the inner portion remaining, such latter measure-

ment giving and being the diameter taken and received by
the referee as the true diameter, in 1867, of the trees in con-
troversy, cut in 1885."

These facts, in connection with other findings of fact and
conclusions of law in favor of plaintiff, would have logically
resulted in an award in his favor, if it had not been for the
learned referee's last conclusion of law, wherein he in sub-
stance held that plaintiff was not entitled to recover in the
present form of action.   The reason for that legal conclusion,
in the referee's own language, is as follows, to wit: "That as
the defendants' right of entry on the Broadhead tract to cut
and remove that portion of the white pine timber which in the
tree would measure ten inches in diameter at the top of a log
twelve feet long, first cut from the butt, was not determined at
the time of the entry thereon by them, as claimed in this case,
the plaintiff is not entitled to recover against defendants in
this action."   The referee accordingly reported in favor of
defendants and against plaintiff "no cause of action." .To
this, among other things, plaintiff excepted.   The exceptions
were all overruled by the court and judgment entered in ac-
cordance with the report of the referee.   This action of the
court in ordering judgment for defendants, etc., constitutes
the third and last specification of error.

As we have already seen, the learned referee found, inter
alia, in substance, that in 1885, on the lot referred to in the
agreement of 1867 as "the Broadhead lot," the defendants cut
certain trees, which, under said agreement, they had a right
to cut; and during the same time they cut on said lot certain
other trees, which, under said agreement or otherwise, they
had no right to cut; but, inasmuch as they had a right to
enter on the premises for the purpose of cutting and removing
the first-mentioned trees, he concluded, as matter of law, that
they were not liable in this action of trespass, etc., for cutting
and removing the last mentioned trees.   That conclusion, we
think, is a non sequitur.   It is true they had a right of entry
on the premises at the time the cutting was done, but it was
not a right of entry for all purposes.   It was solely for the
purpose of cutting and removing such trees as, under the
agreement, they had a right to cut, and nothing else.   In
cutting and removing other trees which they had no right, and

Statement of Facts.

must have known they had no right to cut, they became trespassers as to such unauthorized and illegal acts, and as such they were liable in this action. The extent, or rather the basis of their liability is fixed by the finding of the referee as to the value of the timber cut by them without authority so to do. The third specification is sustained.

> Judgment reversed, and record remitted for further proceedings in accordance with this opinion.