## Commonwealth *v.* LaBar, Appellant.

*Forest laws—Illegal cutting of timber—Penalty—Misdemeanor—Indictment—Evidence—Act of February* 25, 1901, *P. L.* 11.

The word "timber" as used in the Act of February 25, 1901, P. L. 11, is not confined to trees of such size that planks, boards, shingles and other lumber may be made therefrom. It applies to saplings, and other small growing woods on the lands of the commonwealth.

The penalty imposed for a violation of the Act of February 25, 1901, P. L. 11, is enforceable by indictment and trial in the court of quarter sessions as in the case of other misdemeanors. In the absence of any provision in the act, a justice of the peace has no jurisdiction to enforce the penalty by summary conviction.

In a prosecution for violation of the Forestry Act of February 25, 1901, sec. 2, P. L. 11, the commonwealth is not required to aver and prove that the defendant wilfully, maliciously and knowingly cut the timber described in the indictment. If the defendant cut the timber, it is immaterial what his intent may have been.

Submitted Nov. 12, 1906.    Appeal, No. 43, Jan. T., 1907, by defendant, from judgment of Q. S. Monroe Co., May T., 1907, No. 43, on verdict of guilty in case of Commonwealth v. Edgar A. LeBar.    Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.    Affirmed.

Indictment for violation of Act of February 25, 1901, sec 2, P. L. 11.

The first count of the indictment was as follows:

The grand inquest of the commonwealth of Pennsylvania, inquiring for the county of Monroe, upon their respective oaths and affirmations, do present, that Edgar LaBar, late of the county aforesaid, yeoman, on February 26, 1906, and at divers other times as well before as since, in the township of Middle Smithfield, at the county aforesaid, and within the jurisdiction of this court, did unlawfully, willfully and maliciously cut about 245 young timber trees, said timber trees standing and growing upon land belonging to the commonwealth of Pennsylvania, and the said Edgar LaBar then and there well knowing said timber to be so standing and growing upon the land of the commonwealth of Pennsylvania and well knowing that the

land on which the same were standing and growing did not belong to him the said Edgar LaBar, contrary to the form of the act of general assembly in such ·case made and provided and against the peace and dignity of the commonwealth of Pennsylvania.

· The court charged in part as follows :

[Where the words, maliciously, unlawfully and knowingly are used, the court holds that is mere surplusage. This act of assembly provides that if any person shall cut timber upon any of the state lands, he shall be liable to pay a penalty, and it does not matter whether the person cutting knew it or not. · That is, if he believed he was cutting on his own land or the land of some other person, it would not excuse him from this penalty. The act provides that if any person shall cut any timber whatever, as the court remembers the act, and if you find from the evidence, and it seems to be uncontradicted, the defendant himself admitting it, that this defendant went upon the state lands and cut timber, it is immaterial whether at that time he knew whether it was the state lands or that it was the land of his father, if he cut, you, as a jury are warranted in finding him guilty in manner and form as he stands indicted. [3]

[As the court remembers it, he cut about 240 hoop poles, averaging in thickness from one and one-half inches to two inches, and the court, in the interpretation of this statute, holds that is included in the word timber, and the evidence being undenied by the defendant, the commonwealth has shown, in the opinion of the court, the fact that he did enter upon the lands, and that he cut timber and is liable to conviction as he stands charged in the first and third counts.] [4]

[There ought to be no trouble in your minds at arriving at a verdict in this case. The court has instructed you as to the law. There is no dispute as to the facts. The court has stated to you that if you believe the facts, it is your duty to find a verdict of guilty on the first and third counts and find the defendant not guilty under the second count.] [6]

*Rogers L. Burnett*, for appellant.—Not only have custom and universal understanding and acceptation placed a definite

and well-known meaning on the word "timber," but the law, also, has greatly assisted in stripping from this word any possible doubt as to its meaning: Shiffer v. Broadhead, 126 Pa. 260.

It has been held in the construction of penal statutes, that where an act contains such an ambiguity as to leave a reasonable doubt as to its meaning, it is the duty of the court not to inflict the penalty: Phila. v. Costello, 17 Pa. Superior Ct. 339; Standard Oil Co. v. Com., 101 Pa. 119; Klein v. Livingston Club, 177 Pa. 224.

Whether wood cut from public lands is timber within the statute, is a question of fact to be determined by a jury, and cannot be properly determined upon a demurrer to the indictment: U. S. v. Soto, 64 Pac. Repr. 419; overruling Bustamente v. U. S., 42 Pac. Repr. 111; 26 Am. & Eng. Ency. of Law (2d ed.), 453.

The quarter sessions had no jurisdiction; unless, therefore, there is some urgent reason, based either on some great public necessity, or upon some consideration touching the public health and welfare, we submit that the question of the intent and knowledge with which an act is done is material, and should have been so held by the court in this case.

*Claude C. Shull*, district attorney, and *Eilenberger & Huffman*, for appellee.

Opinion by Morrison, J., December 10, 1906:

The defendant was indicted, convicted and sentenced under the provisions of the Act of Assembly of February 25, 1901, P. L. 11; section 2 of the act reads: " Any person or persons who shall kindle fires upon any of the forestry reservations of this commonwealth, except in accordance with such rules and regulations as may be prescribed by the forestry reservation commission, or who shall cut or remove any timber whatever, or who shall do or cause to be done any act that will damage forestry lands or timber belonging to this commonwealh, shall be guilty of a misdemeanor, and upon conviction thereof be subject to a penalty of not less than $100 nor more than $500 for each offense committed, with costs of suit, which penalty and costs of suit shall be collected in the same manner as is now provided

by existing laws for like offenses committed on forest lands belonging to individuals ; all fines and penalties when collected to be paid to the commissioner of forestry, who is hereby directed to pay the same over to the state treasury ; provided, that if the defendant or defendants neglect or refuse to pay at once the penalty and costs imposed he or they shall be committed to the common jail of the county wherein the offense was committed until such penalty and costs are paid."

While the record contains seven assignments of error we think all of the questions raised by them can be considered and decided without considering each assignment separately.

1. The learned counsel for the defendant argues that the word "timber" used in the act should be held to mean trees of such size that planks, boards, shingles and other lumber may be made therefrom. In support of this contention he cites several acts of assembly, and several definitions of the word "timber" and the words "timber trees." In our opinion the acts of assembly and definitions cited do not support counsel's contention. The case of Shiffer v. Broadhead et al., 126 Pa. 260, is also cited. But an examination of that case shows that it has no application to the present one. That was a contract for the sale of the white pine and hemlock timber upon a certain lot of land, and while the contract does not so state, yet it was held to have been made in view of the custom of lumbermen in 1867, and that it clearly referred to trees of such sizes as were recognized by lumbermen in the region where the contract was to be enforced. That case has no application to the mischief existing in 1901, and the act then passed to remedy it. If we keep in mind the well-known fact that in 1901 there were vast tracts of land in Pennsylvania which had been stripped of all large timber or "timber trees," and that these barren stripped lands were nearly worthless, and their condition was materially lessening the water supply of the commonwealth, we can readily understand the legislative intent as expressed in the act in question. Furthermore, it should be remembered that the maximum price allowed to be paid for lands from which the large timber had been stripped, by the forestry commission, was in 1891, $5.00 per acre: Act of February 25, 1901, P. L. 11. To our minds these facts clearly show that the act in question was not aimed solely at persons who cut

trees suitable for sawing into lumber or " timber trees " standing on the lands of the commonwealth. We think it is entirely within the legislative intent, expressed in the act, to hold that the penalty provided therein applies to the defendant who was found to have cut 249 maple, white oak and hickory sticks or poles standing on the lands of the commonwealth. In point of fact the defendant did not seriously deny that he cut the hoop poles described in the indictment. We have on our statute books several acts of assembly which show a clear legislative intent to encourage the growth and protection of the smallest shrubs or saplings which may in time become " timber trees." In our opinion in these acts the word " timber " includes small and large growing woods, and of this we are not in doubt. We quite agree with the court below that the hoop poles came within the definition of " timber," and within the purview of the statute of February 25, 1901. We have examined the definitions of timber in several of the dictionaries, and cannot agree that this word means, necessarily, large or " timber trees."

2. We have no doubt that it was the duty of the court below to instruct the jury that " if they believed the evidence they must convict the defendant." It was proper for the court to instruct the jury that the sticks cut were timber, and leave to the jury to find whether or not they had been cut by the defendant, on the lands of the commonwealth. We think the testimony clearly shows that the defendant went upon the lands of the commonwealth, and cut and destroyed young growing timber, and when brought into court for his unlawful conduct, he relies on the barest technicalities as a defense, and we see no merit in such defense.

3. The defendant's counsel contends that the penalty named in the act of February 25, 1901, must be enforced in a summary action before a justice of the peace, and that the indictment and trial before the court and a jury is illegal.

The act defines the offense as a misdemeanor, and fixes the penalty and provides, " that if the defendant or defendants neglect or refuse to pay at once the penalty and costs imposed, he or they shall be committed to the common jail of the county wherein the offense was committed until such penalty and costs are paid."

The Criminal Procedure Act of March 31, 1860, P. L. 427, sec. 32, provides : " The courts of quarter sessions of the peace shall have jurisdiction and power within the respective . . . . counties to try certain enumerated offenses ; " and then adds: " The Courts of Quarter Sessions shall also have jurisdiction in cases of fines, penalties or punishments, imposed by any Act of Assembly, for offenses, misdemeanors and delinquencies, except when it shall be otherwise expressly provided and enacted."

The offense of cutting timber is made a misdemeanor by the act of 1901, and the penalty provided is to be enforced upon conviction, but the act does not provide that a justice of the peace shall have jurisdiction to try the offender and impose the penalty. We are safe in saying that no such thing is known to our law as trying a defendant for a misdemeanor and enforcing the penalty, before a justice of the peace, in the absence of express authority giving him jurisdiction. We are without doubt that the remedy under the act of 1901 is by indictment in the quarter sessions.

We have many acts of assembly providing for summary convictions before a justice of the peace, but each of them expressly so provides in plain terms ; some of these acts are the following : Act of May 29, 1901, P. L. 302, regulating the catching of fish, etc.; Act of April 19, 1905, P. L. 217, regulating the running of automobiles, etc.; Act of June 8, 1881, P. L. 82, relating to malicious mischief to orchards, etc. ; Act of April 22, 1905, P. L. 272, relating to classification of fish, etc. On the other hand, we might refer to many acts of assembly creating misdemeanors and providing punishments without giving authority for summary convictions before a justice of the peace, and in each one of which the remedy is by indictment in the quarter sessions.

4. We are of the opinion that the commonwealth is not required to aver and prove that the defendant in the present case willfully, maliciously and knowingly cut timber described in the indictment. If the defendant went upon the lands of the commonwealth, without authority, and cut and destroyed growing timber he is liable to the punishment provided by the act, and it is immaterial what his intent may have been. This case is one of the class where the commonwealth is not required

to prove the guilty intent of the defendant. The statute forbade the act and the defendant was bound to know and obey the law. We consider the offense defined in the act in question, properly construed, came within the class of crimes discussed by the Supreme Court in Commonwealth v. Weiss, 139 Pa. 247, wherein a guilty knowledge or criminal intent is not a necessary ingredient to support a conviction. The language in the indictment charging the defendant with committing the offense willfully, maliciously and knowingly may be regarded as surplusage. The indictment will be good with these words eliminated.

The assignments of error are all dismissed, and the judgment or sentence is affirmed, and appeal dismissed at the costs of the appellant.