## Bennett v. Pennsylvania Electric Company

Before McDonald and Wolfe, JJ.:

*Llewellyn E. Lloyd*, for plaintiffs.

*Spence, Custer, Saylor & Wolfe* and *Fisher, Ruddock & Simpson*, for defendant.

McDONALD, J., December 8, 1960. Plaintiffs, husband and wife, are the owners of a tract of land situate in East Wheatfield Township, Indiana County. Defendant is a public service company supplying light, heat and power in the Commonwealth, with its principal office at 222 Levergood Street, Johnstown, Cambria County.

Plaintiffs have filed an action against defendant alleging that it has trespassed on their land by leasing to Conemaugh Mining Company, hereinafter referred to as Conemaugh, a corporation engaged in the mining of bituminous coal in Indiana County, the right to jointly occupy the poles of an electric distribution line for which the right of way had been acquired by eminent domain proceedings.

In their complaint, they aver the Public Utility Commission "authorized and empowered the defendant to condemn a right of way" across their land to be used for "the construction, operation and maintenance of a twenty-two thousand volt electric distribution line

extending from its Seward station to a sub-station in West Wheatfield Township, Indiana County, Pennsylvania"; that defendant entered their land and erected five poles and three electric lines the entire length of the right of way; that it entered into a lease with Conemaugh which "authorized and empowered the lessee to erect attachments and otherwise occupy Penelec's poles, with conductors supported by necessary cross-arms, racks, insulators and miscellaneous hardware, and a 4,000 volt line conducted by five wires extending the entire length of 1,391 feet over the plaintiffs' farm," that "a large amount of high voltage current purchased from Penelec, . . . is conducted across the plaintiffs' farm through the five lines unlawfully placed there by Conemaugh Mining Company."

Defendant filed an answer and new matter averring the right of way was acquired by eminent domain proceedings after approval by the Public Utility Commission and issuance of a certificate of public convenience. It admits construction on plaintiffs' land of a 22,000 KV. line of three wires, a 4,000 KV. line of three wires, and a 150 volt line of two wires. The lease with Conemaugh, dated July 11, 1957, which is referred to in plaintiffs' complaint, is admitted, but alleged to be incident to the service of current to Conemaugh and within the terms of the condemnation resolution and the certificate of public convenience. In new matter, it is averred the lines were erected previous to a viewers' proceeding in Indiana County and damages incident to the taking of the right of way and its use were awarded to and accepted by plaintiffs.

Plaintiffs and defendant have filed motions for judgment on the pleadings which are before the court en banc for disposition.

It is not clear from the pleadings and exhibits whether the additional five wires and other attach-

ments of which plaintiffs' complain are owned by defendant and leased to Conemaugh, or owned by Conemaugh and merely constructed by defendant. While plaintiffs' complaint, paragraph 5, refers to the agreement between defendant and Conemaugh granting a license to jointly use and occupy the poles with its attachments, defendant's answer, paragraph 4, states all lines were constructed by its agents. In its new matter, paragraph 8, it refers to the distribution line as "including the five wires leased to Conemaugh Mining Company." However, whether the lines in addition to the 22,000 KV. line are owned by, or leased to Conemaugh will not affect our conclusions.

The terms of the agreement, exhibit C of the answer, between defendant and Conemaugh permits Conemaugh to jointly use the poles of defendant for its attachments. It describes "attachments" which may be made to its poles incident to this use as "all wires, appliances, apparatus, fixtures and appurtenances now or hereafter used on Penelec poles by licensee in its business." It would seem, therefore, if the lines attached to the poles on the right of way, other than the 22,000 KV. line, are constructed pursuant to the agreement, they are the property of Conemaugh and used by that company for its own corporate purposes.

The pivotal question here is whether there is an illegal use of the right of way by defendant's grant of joint occupancy, which is in excess of the rights acquired by condemnation and therefore constitutes a trespass upon plaintiffs' land.

Under the Act of May 21, 1921, P. L. 1057, 15 PS §1182, defendant has the right to appropriate property for the transmission and distribution of power. This right, however, may be exercised only after the Public Utility Commission, upon application, "shall have found and determined, after public hearing, that the service to be furnished by said company through

the exercise of said power is necessary or proper for the service, accommodation, convenience, or safety of the public." Damages incident to the appropriation are recoverable under the provisions of the Act of April 29, 1874, P. L. 73, sec. 41, as amended, 15 PS §§481-483.

On October 17, 1956, defendant adopted a resolution appropriating a right of way across plaintiffs' land, specifically describing it and stating as the purpose:

"To construct, maintain and operate, an electric distribution line consisting of wooden poles, conductors, overhead and underground lightning protective wires, private communication wires, guides, push braces and other accessory apparatus and equipment, . . . Together with the right from time to time to install on said land such additional apparatus and equipment as this company may deem necessary and the right to remove said line or any part thereof. . . ."

It will be noted the resolution refers to "an electric distribution line," but did not describe it by capacity.

An application was made to the Public Utility Commission for a certificate of public convenience wherein it was stated inter alia:

"6. That Penelec is about to construct a 22KV. distribution line from its Seward station, located in East Wheatfield Township, Indiana County, Pennsylvania, to a substation to be constructed by Conemaugh Mining Company in West Wheatfield Township, Indiana County, Pennsylvania, which distribution line will consist of wooden poles, etc. . . . deemed by Penelec to be necessary therefor. . . .

"9. That Penelec intends to construct upon said right of way an electric distribution line consisting of the following:

"Three line conductor wires and five single pole structures."

On April 29, 1957, the commission, acting on the application, noted that defendant proposed to con-

struct a 22,000 KV. electric distribution line as referred to in the application and found it "is necessary or proper for the service, accommodation, convenience, or safety of the public and should be granted". Thereupon the following order was made:

"1. That the instant application be and hereby is approved.

"2. That approval of the exercise of the right of eminent domain by Pennsylvania Electric Company in acquiring a right of way across a tract of land situate in East Wheatfield Township, Indiana County, owned by Michael and Cecelia Bennett, his wife, be and is hereby granted, and that a Certificate of Public Convenience issue in evidence of such approval."

Accordingly, the certificate was issued on the same date certifying that after investigation and/or hearing on the application and having made and entered its report and order, ". . . found and determined that the granting of said application is necessary or proper for the service, accommodation, convenience and safety of the public, and this Certificate is issued evidencing its approval of the said application as set forth in said report and order."

It is noteworthy that the application to the Public Utility Commission and the order thereon refer to a 22,000 KV. line. Since the resolution antedates the application and refers to "an electric distribution line" we must assume the latter correctly describes the contemplated line. The certificate of public convenience therefore was issued on a finding by the commission that such a line was necessary for the "service, accommodation, convenience and safety of the public."

While the question is not directly involved in this case, there is authority that a use of the right of way in excess of that considered by the Public Utility Com-

mission requires further approval. In Dickel v. Bucks-Falls Electric Co., 306 Pa. 504, the Supreme Court stated, at page 510:

"While it is true that the electric company in one part of its petition to the commission used the general language of the Act of May 21, 1921, P.L. 1057, giving to electric companies certain additional rights of eminent domain, we believe that the true reading of the entire petition and of the report and order and certificate of public convenience of the commission shows that the electric company sought to condemn a right-of-way for the construction, erection, operation or maintenance of a transmission line over the strips or tracts of land belonging to the appellee. It was the transmission line that was declared necessary for supplying light, heat, and power to the public in the petition. The right-of-way for the line was frequently referred to as the thing desired. And the public service commission approved of the electric company's exercising the right of eminent domain for that transmission line purpose and none other. Legally, therefore, the electric company did not and could not, without the commission's further approval, appropriate more of appellee's property, and it follows from this that the damages to which the appellee is entitled are damages resulting from the appropriation of the described right-of-way across his land for the transmission line."

And on page 511:

"Only such property may be appropriated as the public service commission determines is necessary for public use."

However, we are not here concerned with an excessive use by defendant for its own purposes, but rather with its grant to Conemaugh of the right to use the right-of-way for a private purpose. If it were the former, the viewers' proceeding in Indiana County, entered to no. 1½, December term, 1957, which re-

sulted in an award to plaintiffs, would probably have been their only recourse; barring, of course, a suit to restrain an excessive use as unnecessary and not in the public interest. Since "The granting of the certificate determines neither the validity nor the scope of subsequent proceedings by eminent domain; it evidences only the preliminary approval by the regulatory body to whom general regulation of the service of such companies was entrusted as specified in the statute": Reiber v. Public Service Commission, 83 Pa. Superior Ct. 507.

In view of the great power of condemnation granted certain public service corporations, the issue here is one which involves fundamental rights of property ownership. Has defendant actually leased to a private corporation for its own private purpose and gain, a right in derogation of plaintiffs' ownership and which could not have been acquired except by agreement and upon payment of proper and adequate compensation? We are satisfied such has occurred and it matters not that it is a grant of a "license" by defendant to affix Conemaugh's attachments to its poles, or a lease of defendant's own lines. In either event, it is a subversion of the principle that a property owner may not, under the guise of eminent domain, be deprived of his property for private purposes. It sins against the fundamental law of this land that a man may not be deprived of his property without due process of law and just compensation.

Apposite to the facts here is the statement of Justice Thompson in Lance's Appeal, 55 Pa. 16, 25:

"The right of the Commonwealth to take private property without the owner's assent on compensation made, or authorize it to be taken, exists in her sovereign right of eminent domain, and can never be lawfully exercised but for a public purpose—supposed

and intended to benefit the public, either mediately or immediately. The power arises out of that natural principle which teaches that private convenience must yield to the public wants. This public interest must lie at the basis of the exercise, or it would be confiscation and usurpation to exercise it. This being the reason for the exercise of such a power, it requires no argument to prove that after the right has been exercised the use of the property must be held in accordance with and for the purposes which justified its taking. Otherwise it would be a fraud on the owner, and an abuse of power."

Conemaugh has no right of eminent domain. It is a private corporation, organized for profit and serves no public use except perhaps incidentally in furnishing coal or other products. Notwithstanding, the agreement between defendant and Conemaugh, paragraph ninth, subparagraph b, vests in Conemaugh the "rights and liabilities" of defendant in event of its abandonment of the right of way. Thus, if plaintiffs have no recourse, they must suffer the constant use of their lands by a private corporation without payment of compensation and ultimately, in event defendant which is responsible for this unusual situation abandons its original rights in plaintiffs' property, the private corporation succeeds to a right which it could not have acquired except by agreement of plaintiffs. The law which is the zealous guardian of property rights certainly cannot countenance such an anomaly.

We are not impressed with the argument that Conemaugh's use is incident to defendant's service to it. Admittedly, defendant has a right to serve Conemaugh; but it may not grant to Conemaugh or any of its customers, for purely private purposes and gain, a right to use facilities which are clothed with a public service and given life by governmental fiat only for

68

such purpose. There is no authority in the resolution of condemnation or the order and certificate of the Public Utility Commission permitting the transmission or distribution of current other than defendant's across plaintiffs' land. It is a patent subterfuge to allow a private corporation to utilize the facilities under the guise of service to it as part of the public.

In Pittock v. Central District & Printing Telegraph Company, 31 Pa. Superior Ct. 589, a railroad company having secured a right of way for its tracks over plaintiffs' land, granted to defendant, a telegraph and telephone company, the right to erect its lines for the purpose of serving the public. The Supreme Court, in affirming a verdict for damages in favor of plaintiffs, stated at page 594:

"The use [referring to the use by the railroad of the right of way] being a public one it necessarily follows that property cannot be taken under the guise of a public use and applied to one which is merely private. The owner is only called upon to part with the possession and control of his property for a particular purpose, and when he presents his claim for damage the amount is fixed by a comparison of the injury resulting from the taking and the advantages resulting to him from the construction of the railroad. To subject the land taken to other uses would not only be without warrant in the statute, but would deprive the owner of his property without compensation.

"In granting to the defendant the right to maintain its line within the right of way over the plaintiff's farm the railroad company subjected the land to a use not contemplated in the condemnation proceeding, nor authorized by the law under which it took possession of the plaintiff's land. If it may authorize the construction of a telephone line it may in like manner permit an oil or gas or water company to lay its pipes within the right of way without the consent of the

owner of the fee, or transfer the right to use the soil for other purposes. . . . The defendant could not have secured a right of way from the plaintiff adversely and we think this cannot be done indirectly by acquiring from the railroad company a right which it had no authority to grant."

In Barker v. Hartman Steel Co., 129 Pa. 551, defendant acquired by lease from a duly chartered and franchised railroad company the right to construct a railroad line in a public street. An injunction restraining the use of the railroad was granted upon complaint of the abutting owners. At page 552, the court stated:

"It is hardly necessary to cite authorities to prove that a railroad corporation, vested with rights of eminent domain, cannot, without express authority of law, sell, lease or transfer those rights, or any part of them, to private persons, nor even to another railroad company."

In Kerry v. West Penn Power Company, 86 Pa. Superior Ct. 522, 526, cited by defendant in its brief, the power company there was not limited to the number of poles indicated in a blue print attached to a condemnation bond and which had not been approved by corporate action at the time the resolution of condemnation was adopted. The court held that the company was authorized by its general condemnation resolution to use the number of poles reasonably necessary to sustain the "cross-arms and wires rendered necessary by the development of the business." However, we are not here concerned with the development of defendant's public service or "business"; but rather with the use of a right-of-way by a third party for private purposes. Admittedly, within the authority of the resolution of condemnation, a power company may erect such equipment as is appropriate and reasonably necessary for the rendition of public service found by the Public Utility Commission to be neces-

sary. We agree with the decision of Kerry, but it is not tailored to fit the precise question here involved.

Nor does the Act of March 19, 1903, P. L. 34, sec. 1, 15 PS §641, which permits corporations "lawfully using electric current, within this Commonwealth, to enter into contracts with each other for use of the same poles, wires and conduits, or for the purchase and sale of electrical current, or for the lease and operation of each others' systems, . . ." warrant the use of the right of way by Conemaugh under license of defendant. Certainly, under the Act of 1903, defendant and Conemaugh may contract with each other "for the purchase and sale of electrical current." However, we cannot agree with defendant's position that this act, in view of its express purpose as stated in the preamble, to avoid "the multiplying of lines of poles and conduits and different systems of wires for conducting currents of electricity along the various roads and streets of this Commonwealth. . . ." is a carte blanche extension of an electric company's powers and authority to contract under any circumstances. Particularly when such contract will affect the property rights of others.

In Citizens Electric Illuminating Company v. Lackawanna and Wyoming Valley Railroad Company, 255 Pa. 176, a chartered electric company operating in Jenkins Township, Luzerne County, sought to enjoin defendant, a railroad company, from entering into a contract with a coal company to furnish power for the operation of its mines. Defendant argued the Act of March 19, 1903, authorized such contract. The court, conceding, as we do here, the companies could lawfully contract, concluded the act must be restricted to the accomplishment of its intended purpose. Reasoning on page 181:

"But the rule which appellant invokes is always in subordination to another and fundamental rule that

requires every statute to be construed with reference to the object intended to be accomplished by it, a rule which governs even to the extent of restraining the meaning of general terms where found necessary in order to interpret clearly the spirit and reason of the statute".

An injunction was granted because the contract was held to be an extension of the purpose of the act and not within contemplation of the Legislature at the time it was enacted. As stated at page 182:

"It cannot be pretended, and it is not, that the contract assailed was entered into to the end that the multiplication of these things might be avoided. The prime object on the part of appellant was to sell electric current to the Pennsylvania Coal Company, something which it had no power to do apart from the Act of March 19, 1903, and it seeks now to derive the power to do this from an act whose sole purpose was what we have above indicated, on the ground that it can furnish the power without multiplying these sources of danger to the public, or, stated in the broadest way, that it can furnish the electric current to the coal company by the use of fewer poles and wires than would be required if that company were to derive its current from any other source of supply."

Applying this interpretation of the Act of March 19, 1903, to the case at bar, we must conclude the obvious purpose of the license granted Conemaugh by defendant is to permit the former to secure a right of way over plaintiff's land without payment of compensation and to do indirectly what it could not do by lawful process. The wisdom of the Supreme Court in restricting the Act of March 19, 1903, is apparent when we consider the gross injustice resulting to property owners if electric companies could, without prohibition, freely contract with private corporations to

lease their facilities and thus, at will, impose additional servitudes on the property without payment of compensation.

We refer briefly to defendant's contention that acceptance by plaintiffs of the viewers' award is res judicata of their rights. With this we do not agree. The petition for the appointment of viewers and the order thereon, exhibit E of the answer, refer to the condemnation resolution, the Public Utility Commission application, order and certificate. At no time did the viewers consider any taking other than the right of way as limited by these documents and pleadings. If, as defendant contends in its new matter, paragraph 9, the wires were in place at the time of the view and this is not denied, the viewers could only have considered a taking within the authority of the resolution and certificate. They had no authority to award damages for an unlawful use of the right of way by defendant or its licensee, Conemaugh.

It is evident from the above discussion defendant could not have condemned a right of way for the purpose of leasing to Conemaugh. Thus, plaintiffs have no right to ask for an additional assessment of damages under the Act of April 29, 1874, 15 PS §§481-483, since that act limits the procedure to a rightful taking.

The action of trespass is a proper one. Defendant's principal office is located in Cambria County and such an action may be brought where service can be made: Bookwalter v. Stewart, 369 Pa. 108.

While Conemaugh might also have been sued, failure to do so is not fatal to the action. Barring a question of service, defendant might have joined Conemaugh as an additional defendant.

A person who authorizes or directs another to commit an act which constitutes a trespass to another's land, is likewise liable for the trespass: Allen v. Will-

ard, 57 Pa. 374; McCloskey v. Powell, 123 Pa. 62, and 138 Pa. 383; Humes v. Cramer, 286 Pa. 251. The same rule applies where defendant, as here, had a right to enter land for certain purposes, but exceeded that right: Kissecker v. Monn, 36 Pa. 313; Shiffer v. Broadhead, 126 Pa. 260; Truby v. American Natural Gas Company, 38 Pa. Superior Ct. 166.

Upon consideration of all well pleaded averments in the complaint, answer and new matter, together with the exhibits, we are satisfied there are no issues of fact to be decided. From the foregoing discussion it is evident plaintiffs are entitled to judgment on the pleadings.

However, plaintiffs claim damages in a lump sum, without itemization or specification of their nature. Since there is a general denial of damages, it will be necessary to submit this issue to a jury for determination of the amount, if any.

Accordingly, we shall make a partial order granting plaintiffs' motion for judgment on the pleadings: Pa. R. C. P. 1034(*b*); Jeffrey Structures Inc. v. Grimaldi, 186 Pa. Superior Ct. 437.

### Order

Now, December 1, 1960, after argument and upon consideration of the pleadings and briefs, it is hereby ordered, adjudged and decreed as follows:

1. Plaintiffs' motion for judgment on the pleadings is granted.

2. Defendant's motion for judgment on the pleadings is dismissed.

3. The issue of damages shall be submitted to a jury for assessment of the amount, if any, plaintiffs have suffered by reason of the trespass.

4. The costs of this proceeding shall be paid by defendant.

Wolfe, J., concurring.