# Delaware, Lackawanna & Western Railway Company *v.* Welser, Appellant.

*Equity—Reformation of written instrument—Chancellor's findings of fact—Evidence—Review.*

1. A chancellor's findings of fact, upon which a decree is based re-
forming a written instrument, will not be reversed by the appellate
court where three witnesses for the plaintiff testify clearly and pre-
cisely to the averments of the bill, while the testimony for the de-
fendants is for the most part evasive and inconclusive.

*Railroads—Purchase of land—Right of way—Land in excess of re-
quirements—Contract—Corporations—Ultra vires.*

2. A landowner who has entered into a contract with a railroad
company to sell the company land for its right of way cannot subse-
quently complain that the contract is illegal because the company
purchased more land than it actually required. In such a case it is
for the company to determine whether it can secure the necessary
accommodation upon better terms by meeting the owner's demands

and purchasing more land than it actually requires, than it can by resorting to condemnation proceedings.

3. Corporations are restrained by considerations of public policy from engaging in other business than that for which they are chartered; but a corporation in making sale of what it has acquired for a proper purpose, but for which it has no use, is not engaging in business not permitted by its charter.

Argued March 7, 1911. Appeal, No. 321, Jan. T., 1910, by defendants, from decree of C. P. Northampton Co., Sept. T., 1909, No. 3, on bill in equity in case of Delaware, Lackawanna & Western Railway Company v. Alice Welser et al. Before FELL, C. J., BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Bill in equity for specific performance. Before SCOTT, P. J.

The chancellor found the facts to be as follows:

1. Alice Welser, prior to May 11, 1909, had title to a tract of land in this county; and on said date she and her husband executed and granted, under seal, an option or right of purchase for the same to the plaintiff company "within a period of ninety days." William Welser signed it also as mortgagee. The land was described in this option, a copy of which is printed in complainant's bill, to consist of "about twelve acres," and the consideration was to be $150 per acre, "as shown by a survey to be made." It was afterwards ascertained to be twelve and four-tenths acres, for which the purchase price would be $1,860. There is no contention that it was indefinitely described. This option, without further expression of its terms, expired on August 9. There was a written acceptance of it by plaintiff, through its superintendent, on August 10, but not before either orally or by writing nor by tender for execution of contract or deed.

2. The last two paragraphs of the option are as follows: "Should the party of the second part elect to take the benefit of this option within ninety days the five ($5.00) dollars paid on this option shall be considered part of the

purchase price. Twenty-five ($25.00) dollars on closing by contract or delivery of gen'l warranty deed free of all encumbrances and the balance within sixty days from the execution of said contract or delivery of deed.

"Contract or deed to be delivered at the Pen Argyl station of the Bangor and Portland Div. of D., L. & W. R. R. Co. between the hours of 9 A. M. and 4 P. M. on or before August 11, 1909."

3. On said August 11, 1909, the agent of plaintiff was at the place thus appointed, and tendered to Mr. Welser in the presence of his counsel $25.00 and a contract of sale prepared for signature, both of which were refused upon the ground that the option had expired without acceptance. (The counsel declared he represented Mrs. Welser also, but such authority cannot be established legally by the declarations in pais of the alleged agent: Grim v. Bonnell, 78 Pa. 152). On August 17, he tendered to both the full consideration, in gold, with a deed for execution, which was also declined. The money was then deposited in bank and notice given that it would be paid when deed was delivered.

4. Mrs. Welser and her husband on August 11 granted an option on the same property for three months (exhibit 4), to Henry Male, the other defendant, for the consideration of $6,000. This was recorded the following morning (August 12), at 7.55 o'clock, preceding by ten minutes the entry of the one now involved in dispute. Subsequently on August 23 they made a conveyance of said premises to Male, by deed, a copy of which appears in plaintiff's bill. The premises sold to Male embraced those described in the option, and included two and one-half acres more, upon which were erected buildings and improvements; permanent, and of substantial value.

5. The option now in question was drafted by the real estate agent of plaintiff company who was also a lawyer, in the office of a justice of the peace to whom he was a stranger but selected by the defendant to advise them in the transaction. The husband is a laborer in a slate

quarry, can read but little, and nothing that is not printed or typewritten; the wife not at all. The justice read and explained its terms to them before execution. (What was said there will require further attention, for upon it solely, if competent for consideration, depends the question whether the plaintiff shall have relief or be denied it.) Neither of them possess quite the average degree of intelligence of persons similarly situated.

6. Henry Male on August 11, before the expiration of the hour named for delivery of contract or deed, knew of the existence of this option to plaintiff, by his presence at the tender and refusal between the parties (104 Pa. 460), and the one granted to him that day contains the following reservation: "It is agreed that this option is null and void if the D., L. & W. R. R. succeed in compelling the said party of the first part to convey the land to said railroad company by law."

7. I further find, if it be admissible under the pleadings or rules of law to apply these contemporaneous declarations to define the written terms of the option, that in the presence of the two intending grantors and the justice of the peace designated by them as advisor, the agent of the plaintiff company in the act of drafting it said that as misunderstandings sometimes arose about the time expiration, of such limitations the agreement should mean that the ninety days mentioned were to end on August 11. The draftsman who had completed the agreement, except the last clause, proceeded then to finish it; after which it was read over to them by the justice and explained as providing the "option" would expire on this last mentioned date. To which they assented. This explanation of its meaning was accepted by the intending vendors as expressing their purpose and intention before signature.

The court entered a decree for specific performance.

*Error assigned* was the decree of the court.

*Robert A. Stotz*, with him *S. Bruce Chase*, for appellant.— The evidence in the case upon which the court below re-

formed this contract does not measure up to the standard required by courts of equity for that purpose, to wit: that it must be "clear, precise and indubitable:" Highlands v. R. R. Co., 209 Pa. 286; Graham v. Carnegie Steel Co., 217 Pa. 34; Diman v. R. R. Co., 5 R. I. 130; Fehlberg v. Cosine, 16 R. I. 162 (13 Atl. Repr. 110).

Plaintiff has no right to acquire more land than it needs, or for other than railroad purposes, and even though the court should hold that the evidence in the case is sufficient, under the rule, to reform the contract, it would seem plain that the company, admittedly needing only a strip of this land, had no legal right to purchase the whole of it; and, if so, specific performance of this contract should be denied: Hitchcock v. Galveston, 96 U. S. 341; Bank of Michigan v. Niles, Walk. Ch. (Mich.) 99.

*Kirkpatrick & Maxwell,* for appellee.—The findings cannot be reversed: Spencer v. Colt, 89 Pa. 314; Boyertown Nat. Bank v. Hartman, 147 Pa. 558; Dilworth v. Kennedy, 201 Pa. 388; Com. v. Stevens, 178 Pa. 543; Hancock v. Melloy, 187 Pa. 371; Mackintyre v. Jones, 9 Pa. Superior Ct. 543.

Railroad companies being fully endowed with the power to acquire and purchase lands, they are the judges of the necessity thereof and a large measure of discretion is left to them in determining for their present and future requirements, the quantity of land to be taken: Chautauqua County Bank v. Risley, 19 N. Y. 369; Farmers' Loan & Trust Co. v. Curtis, 7 N. Y. 466; Leazure v. Hillegas, 7 S. & R. 313; Goundie v. Northampton Water Co., 7 Pa. 233; Spear v. Crawford, 14 Wend. (N. Y.) 20; Ex parte Peru Iron Co. 7 Cowen (N. Y.), 540.

OPINION BY MR. JUSTICE STEWART, October 9, 1911:

The bill in this case, as amended by leave of court and pleaded to by the defendants, alleged that, before the execution of the contract as prepared by the scrivener, in which it was recited that the option for the purchase of

the land in question was for ninety days, it was distinctly understood and agreed between the parties that the date of expiration was to be August 11, following, and that the concluding clause in these words: "Contract or deed to be delivered—between the hours of nine A. M. and four P. M. on or before the 11th day of August, 1909," was added to express such understanding and agreement. No exception was taken to the order allowing the amendment. The original bill was for specific performance of the contract; the amendment prayed for reformation of the contract to the end that what was supposed to be obscurity of phrase in the last clause might be removed, and the contract be made to read that the option was to expire August 11, 1909, instead of at the end of ninety days, which would have been August 9, 1909. It was supposed to be necessary, or at least desirable as a cautionary measure, inasmuch as it was not until August 11, that the plaintiff attempted to exercise the option granted. Whether the contract as written left the date of expiration of the option doubtful is a question we need not consider. The case proceeded on the theory that this was a disputable question, and the errors assigned can be disposed of on the assumption that it was. What is urged upon us is that the evidence introduced by the plaintiff in support of the averment contained in the amended bill was insufficient to warrant a reformation of the contract in the particular referred to. A discussion of the evidence in detail is unnecessary. It is enough to know that three witnesses, one of them a justice of the peace, selected by the grantors to represent them in the transaction as friend and adviser, and a stranger to the parties representing the plaintiff, testified that it was distinctly stated, and as distinctly agreed to by all the parties, that for the purpose of avoiding misunderstanding and dispute as to the limit of the option, August 11 was to be regarded as the last day for its exercise; and that the final clause was added to express this understanding. Counsel for appellants admit that the testimony of these witnesses was both clear and pre-

cise, but insist nevertheless that it does not measure up to the standard required for the reformation of a written contract. To the mind of the chancellor it was not only clear and precise, but indubitable, in the sense that it was convincing. The opposing testimony was for most part evasive and inconclusive. It was a matter of controversy whether the one witness who denied directly and unequivocally that any specific date was fixed upon for the expiration of the option was present during the whole of the conversation. If the conversation upon which the execution of the contract followed was as testified to by plaintiff's witnesses, it requires no argument to vindicate the correctness of the chancellor's conclusion as to its sufficiency for the purpose for which it was offered. The credibility of the witnesses was for the chancellor; and those for the plaintiff having been unassailed, his findings with respect to the disputed facts are not to be questioned. It is argued that the testimony does not show mutual mistake, but simply a misunderstanding on the part of the plaintiff as to when the option was to expire; that it does not show that the vendors were of the same mind as the vendee as to the purpose and significance of the clause that was to be added to the agreement as originally prepared. The testimony which prevailed with the chancellor was to the effect that August 11 was distinctly agreed upon as the date of expiration; that the final clause of the agreement was added in order to express the entire contract, and that after it had been added the entire paper was read over to the grantors with special explanation that the last clause fixed the date of expiration of option. If credited, and the concluding clause in the contract does not clearly define another limit for the option than the ninety days originally agreed upon, it necessarily follows that the common understanding as to what it should express was disappointed. If the conversation between the parties which led to the insertion of this clause was what the witness testified to, no room exists for any misunderstanding as to what was agreed upon. Indeed

misunderstanding is not pretended.  What is insisted on
is that the conversation did not occur.  The evidence was
convincing to the chancellor, for reasons which we think
entirely adequate that it did occur, and that, without
more, established mutuality of mistake.

The other questions raised on the record are quite as
free from difficulty.  The contract gave the plaintiff an
option for the purchase of twelve acres out of a tract
of land containing fourteen acres.  The negotiation be-
gan with an offer from the plaintiff to buy a right of
way through the tract for the purpose of laying its tracks
thereon.  Mrs. Welser, owner of the land, objected to this,
giving her reasons, but expressing a willingness to sell
the whole tract.  After a day's consideration it was agreed
that the company should have an option for the pur-
chase of the twelve acres, a condition being that the com-
pany, at its own expense, was to remove the improvements
on the twelve acres and reconstruct them on the remaining
two.  It is argued that the twelve acres are in excess of
what is required for the relocation of the company's tracks,
and that therefore the contract on the part of the company
is ultra vires and not enforceable.  This is taking a very
narrow view of corporate rights and powers.  It is not open
to question that a railroad company may obtain its rights
of way upon such terms as are most favorable to it, and
to this end may resort to condemnation proceedings or
purchase such estate or interest in the land as may be
necessary for its accommodation.  Whether it can se-
cure the conveniences it requires on better terms by con-
demnation or by purchase, is for itself to determine; and
so, whether it can secure the accommodation upon bet-
ter terms by meeting the owners' demands that it pur-
chase more land than it actually requires than it can
by resorting to condemnation proceedings, is for itself
to determine.  So long as its only purpose in acquiring
more land than it actually requires is to secure what it does
require upon the easiest terms to itself, it is acting within
proper limits.  Corporations are restrained by considera-

tions of public policy from engaging in other business than that for which they are chartered; but it has never been understood that a corporation in making sale of what it has acquired for a proper purpose, but for which it has no use, is engaging in business not permitted by its charter. The true test in all such cases is the good faith of the transaction. Was the purchase made to accomplish an object falling within the general purpose and scheme of the corporation? If so, it would be a legitimate exercise of power. It would be otherwise only were it a clear attempt to enlarge the operations of the corporation so as to embrace more than the charter contemplates. There is not a suggestion that the railroad company in this transaction was attempting to combine with its business of common carrier that of dealing in real estate. Says MITCHELL, J., in Malone v. Lancaster Gas Light & Fuel Co., 182 Pa. 309: "In considering such questions much weight must be allowed to the judgment of the parties most interested, the officers and stockholders of the corporation itself, and while they will not be permitted, as against the commonwealth or a dissenting stockholder, to go outside of their legitimate corporate business, yet when the act questioned is of a nature to be fairly considered incidental or auxiliary to such business, it will not be unlawful, because not within the literal term of the corporate grant." In the same opinion the following from BIGELOW, C. J., in Brown v. Winnisimmet Co., 93 Mass. 326, is quoted approvingly: "We know of no rule or principle by which an act creating a corporation for certain specified objects or to carry on a particular trade or business, is to be strictly construed as prohibitory of all other dealings or transactions not coming within the exact scope of those designated. Undoubtedly the main business of a corporation is to be confined to that class of operations which properly appertain to the general purposes for which the charter was granted. But it may also enter into contracts and engage in transactions which are incidental or auxiliary to its main business, or which

may become necessary, expedient, or profitable in the care and management of the property which it is authorized to hold." These authorities are so conclusive as to make further discussion of the question unnecessary. The transaction in this case being lawful on the part of the railroad company mutuality of remedy follows as a matter of course. The case as we read it stands clear of all suspicion of fraud or overreaching, and we see nothing in the record that questions in the slightest degree the right of the plaintiff to a specific performance of the contract as established. The assignments of error are overruled, the appeal is dismissed at the costs of the appellants, and the decree is affirmed.