R. A. Malone, Stockholder, for himself and for such other
Stockholders of the Lancaster Gas Light and Fuel
Company as may desire to become parties to this bill,
Appellant, v. The Lancaster Gas Light and Fuel Com-
pany and John I. Hartman, P. T. Watt, S. H. William-
son, John A. Coyle, J. Gust. Zook, J. D. Skiles, J. Fred.
Sener, N. M. Woods, D. McMullen, H. M. North, J. C.
Hager, W. U. Hensel, P. B. Shaw and J. H. Baum-
gardner, Directors and Stockholders of the said Cor-
poration, and other Defendants unknown to this Plain-
tiff.

*Corporation—Stockholder's bill—Fraud—Evidence—Burden of proof.*

On a stockholder's bill against a corporation and other stockholders to
enjoin the issue of new stock and the increase of the corporation's bonded
indebtedness, where it is averred that the increase is not in good faith for
the purposes and in the interest of the corporation, but in pursuit of a
scheme to acquire control of the corporation and run it in the interest of
a rival, the burden of proof is upon the complainant.

*Corporations—Incidental powers—Ultra vires.*

Corporations may transact, in addition to their main undertaking, all
such subordinate and connected matters as are, if not essential, at least
very convenient to the due prosecution of the former.

A corporation organized for the purpose of " manufacturing and sup-
plying illuminating and heating gas " may not only supply the gas itself,
but may also incidentally deal in such patented appliances and conven-
iences as will induce new customers to use gas, or old ones to use more.

Argued May 21, 1897. Appeal, No. 197, Jan. T., 1897, by
plaintiff, from decree of C. P. Lancaster Co., Equity Docket,
No. 3, p. 103, dismissing bill in equity. Before Sterrett, C. J.,
McCollum, Mitchell, Dean and Fell, JJ. Affirmed.

Stockholders' bill in equity for an injunction to restrain a
corporation from issuing stock and bonds.

The averments of the bill sufficiently appear in the opinion
of the court below, Brubaker, J., which is as follows :

The court finds the following facts as adduced from the testi-
mony :

1st. The plaintiff is a stockholder of the said the Lancaster Gas Light and Fuel Company, hereinafter called the Gas Company, holding three hundred and twenty shares of the capital stock.

2d. The said Gas Company was incorporated on June 27, 1876, under the provisions of the act of April 29, 1874, and its supplements, for the purpose of manufacturing and supplying illuminating and heating gas to the citizens of Lancaster.

3d. The Edison Electric Illuminating Company, of Lancaster, Pennsylvania, hereinafter called the Edison Company, was incorporated on March 1, 1886, under the provisions of the act of April 29, 1874, and its supplements, for the purpose of manufacturing, distributing and supplying electricity for lighting, heating, motive power and all other purposes for which electricity can or may be used, to the citizens of Lancaster, Pa., and to the territory adjacent and contiguous thereto.

4th. The Citizens' Electric Light, Heat and Power Company, of Lancaster, Pennsylvania, hereinafter called the Citizens' Company, was incorporated on February 9, A. D. 1893, under the provisions of the act of April 29, 1874, and its supplements, for the purpose of supplying light, heat and power by electricity to the public in the city of Lancaster, Pa., and to such persons, partnerships and corporations residing therein or adjacent thereto, as may desire the same.

5th. The capital stock of the said Edison Company was $135,000, and the bonded indebtedness was $250,000.

6th. The capital stock of the Citizens' Company was $100,000, and the bonded indebtedness was $25,000.

(The foregoing findings of fact are alleged in the bill and are admitted in defendant's answers.)

7th. The above named electric light companies were competitors for business in the city of Lancaster, and P. B. Shaw, a stockholder of the Edison Company, owned about $100,000 of its $135,000 capital stock; he was also the owner of some of the bonds of said company; the said P. B. Shaw obtained an option by which he was enabled to, and did, purchase a majority of the stock of the said Citizens' Company; after such purchase he subsequently purchased a controlling interest in the Lancaster Gas Light and Fuel Company; he purchased all of said interest for himself and on his own responsibility and with money owned or borrowed by him.

8th. The said Gas Company was a corporation with a capital stock of $200,000, divided into 8,000 shares of the par value of $25.00 each, and a bonded indebtedness of $202,400, and the profits from its business had for many years enabled it to pay the interest on all its indebtedness, dividends of at least eight per cent on its capital stock, and it had, in addition thereto, on December 1, 1894, a balance of cash on hand of $10,406.46. At the said time the said Gas Company had and was liable to pay a floating indebtedness of $25,000, for which it had given a promissory note of that amount.

9th. Of the said defendants, John I. Hartman, John A. Coyle, J. Gust. Zook, John D. Skiles, J. Fred. Sener, N. M. Woods, H. M. North, John C. Hager, W. U. Hensel and John H. Baumgardner were not stockholders, owners or directors in the Edison Company at the time P. B. Shaw acquired control of a majority of the stock in the Gas Company and the Citizens' Company.

10th. The three companies and corporations hereinbefore named were the only corporations organized for the purpose of supplying heat, light and fuel to the citizens of Lancaster in existence on December 1, 1894, subsequent thereto or for some years previous.

11th. The said P. B. Shaw, in procuring an interest in or majority of the stock of the said Citizens' Company and Gas Company, was not the agent of any of the said parties, his codefendants, and when he purchased the said stock and interest, he acted on his own behalf and without any authority from, or agency of, any of his codefendants.

13th. After the said P. B. Shaw had purchased all the stock of the Citizens' Company, he bought all of its property and assigned, transferred and conveyed the same to the Edison Company, of the stock of which he held a large majority.

14th. There was no arrangement at the time of its purchase, by and between P. B. Shaw and his codefendants, or any of them, to raise any money for the purchase of any stock of the Citizens' Company. Neither they nor any of them ever arranged or authorized any arrangement to be made by them, for the raising of money for the purchase of said stock, by the increase of the capital stock or of the bonded indebtedness of the Gas Company. Neither they nor any of them made or entered into or

authorized any arrangement by which any increased stock or bonds of said Gas Company were to be issued to the said P. B. Shaw, in the interest of himself and the other parties, codefendants, as he avers, to raise money for acquiring control of the said Gas Company and the said Citizens' Company.

15th. At a meeting of the stockholders of the Gas Company, held on February 12, 1895, the following preamble and resolution were adopted:

" Whereas, The Backus Manufacturing Company, being the owner of useful and valuable patents for the application of gas for heating purposes, has, through P. B. Shaw, proposed to sell and assign to this company the exclusive right to use and sell and to license others to use and sell within the territory of Lancaster, Pennsylvania, and adjacencies, the Backus Portable Steam Heater, Radiating Mantel and Gas Consuming Appliances now owned by said Backus Manufacturing Company, for the sum of one hundred and ninety-seven thousand, six hundred dollars, payable in the stock and bonds of the said Lancaster Gas Light and Fuel Company, one hundred and twenty-five thousand dollars in stock, and seventy-two thousand and six hundred dollars in bonds, upon condition that this company will immediately, upon acceptance of said proposition, begin and energetically push the sale and use of said system of steam heating in the city of Lancaster; therefore, be it

" Resolved, That the aforesaid proposition of P. B. Shaw be, and the same hereby is, accepted, and that the board of directors be requested to make said purchase and to issue the stock and bonds to said P. B. Shaw, in accordance with said proposition."

16th. The meeting of the stockholders of the Gas Company at which said resolution was adopted was regularly called, in accordance with a resolution duly passed at a meeting of the board of directors on December 13, 1894, and according to the laws of the commonwealth providing for the increase of stock and the bonded indebtedness of corporations. All of the stockholders of said Gas Company except two, one of whom was plaintiff, numbering in all twenty-seven out of twenty-nine, and holding 7,580 shares out of the 8,000 shares of the capital stock of the said company, expressly waived notice of said meeting and assented to said increase of stock and indebtedness in writ

ing; advertisement was made for sixty days in the newspapers of the city of Lancaster of the time and place of said stockholders' meeting; and at the meeting of said stockholders every share of stock present or represented was voted in favor of said increase of stock and indebtedness, and the above resolution, requesting the directors to issue the stock and bonds to the said P. B. Shaw, for the purchase of the right to use and sell and license others to use and sell the Backus Portable Steam Heater, Radiating Mantel and Gas Consuming Appliances, was unanimously adopted at said meeting.

18th. Since the adoption of the said resolution, and since the increase of the stock and indebtedness of the Gas Company, and since the purchase of the right to use the Backus patents and appliances, the operations of the said Gas Company have been conducted with increased efficiency and economy, so that, with a gain to the stockholders, the said Gas Company has been enabled to supply gas to the citizens of Lancaster and to their consumers and patrons at a reduced price.

20th. P. B. Shaw, one of the defendants, sold a large quantity of the stock of the Gas Company and the Edison Company, in equal proportions, all at its par value, with the exception of that sold to one or two persons, and to them at prices not less than seventy-five per cent of its par value; all of whom are bona fide purchasers, and are still stockholders, a list of whom is appended to the testimony filed of record in this case.

21st. The plaintiff was not a stockholder in either of said electric light companies.

### CONCLUSIONS OF LAW.

Two questions arise from the pleadings and the testimony in this case:

1st. Whether, as alleged by the plaintiff, the purchase by the Gas Company of the Backus heater and the increase of the capital stock and the bonded indebtedness of the said Gas Company, was a scheme and a fraud on the Gas Company, perpetrated by the parties defendant, other than the Gas Company, and prejudicial to the plaintiff.

2d. Whether the license assigned by the Backus Manufacturing Company or P. B. Shaw to the Gas Company was a license to use anything that was proper, convenient, necessary

or connected with the manufacture of gas, or its distribution, or for the purposes for which the company defendant was incorporated.

The plaintiff contends that the increase of the capital stock of the Gas Company to the amount of $125,000, and the increase of its bonded indebtedness to the amount of $72,600, are not for any value actually received by the said company, and not in the furtherance of its real interests, but it was done for the purpose of enabling said defendants, other than the Gas Company, to obtain control of the three companies organized in said city of Lancaster, for the purpose of supplying heat, light and fuel to the citizens thereof.

A careful examination of the testimony adduced on the part of the plaintiff will show that the plaintiff failed in his proof to establish the material averments contained in his bill; and, therefore, the court was obliged to refuse to find, as requested by the plaintiff, that the increase of the Gas Company's capital stock and bonded indebtedness was not for any value by the company and not in furtherance of its real interests. There was no evidence before us to show that the license assigned by the Backus Manufacturing Company was not of any value, or that the increase of the capital stock and bonded indebtedness of the Gas Company was not made in compliance with the act of assembly. Admitting, for the sake of the discussion, that P. B. Shaw, one of the defendants, who controlled the Edison Company by reason of holding a majority of its stock, and virtually the Gas Company for the same reason, and made the purchase of the Citizens' Company, devised a scheme for the purpose of controlling the three companies, which is the most that can be inferred from the testimony adduced, the transaction, in our opinion, did not prejudice the rights of the stockholders of the Gas Company. On the contrary, the proof rather shows it to have been of benefit to the company. We cannot conceive how, therefore, under the circumstances of this case, it has prejudiced the rights of the complainant. All the stockholders of the Gas Company, it appears, with the exception of the plaintiff, and, perhaps, one other, willingly entered into the transaction and gave it their support. The acts of its directors were not considered improper within the belief of all these stockholders, many of whom as will be seen are among our best and most in-

telligent business men, who, doubtless, would have been the first to complain if these acts had been done to their prejudice as stockholders. Thus, we have the request of but one stockholder, invoking the aid of a court of chancery to declare the acts of his company in the premises illegal and void, unsupported by any proof of fraud or collusion, or evidence of fraud or corrupt motives by other parties than the company defendant, as charged and averred in plaintiff's bill. Had it been shown at the hearing of this case that P. B. Shaw or a majority of the Gas Company or any of its directors had entered into an alleged scheme to benefit themselves at the expense of the Gas Company or of the minority of the stockholders, the case would have been different. The plaintiff has not brought himself, however, within this chancery rule, by reason of the lack of proof, and, therefore, we must hold that the plaintiff has no standing on this point of the case.

The second question, however, needs careful consideration. It involves the interpretation of the statute governing the franchise of the company; and in this we recognize the principle that a single stockholder may, when measures are adopted, which are plainly beyond the powers of the company and inconsistent with the objects for which the company was incorporated, invoke the aid of a chancellor to interpose in behalf of the minority stockholders to prevent the performance of such act. The usual remedy, however, is by quo warranto by the commonwealth through the attorney general, but in our opinion it is not the only remedy. We will, therefore, consider this question: That is, were the acts of the Gas Company in the purchase of the Backus heater, and consequently, its increase of the capital stock and bonded indebtedness, ultra vires?

It is contended by the learned counsel for the plaintiff that the Backus heater is not an appliance used in the manufacture and supply of gas, or in distributing the same to consumers. They pressed this point with great force at the argument, and with some degree of plausibility under the following rule:

"A corporation, indeed, constituted by statute for certain purposes, is regarded as so entirely the creature of the statute, that acts done by it without the prescribed formalities, or for objects foreign to those for which it was formed, would be, in general, null and void. In so far as the rights granted to cor-

porations are destructive of, or encroach upon public or common right, they are undoubtedly to be construed most strongly against those setting them up, and in favor of the state or public; they are not to be extended beyond the express words in which they are given, or their clear import; and whatever is not given in unequivocal terms, is to be deemed as expressly withheld. And even in their own internal affairs, they are held to strict and rigid conformity with the powers granted, and the manner of their exercise prescribed by the statutes under which they have their being." Endlich, on the Interpretation of Statutes, sec. 354. This rule is, however, modified: Id., sec. 416; Emerson v. Commonwealth, 108 Pa. 124.

The legislation affecting the subject is contained in the act of 1874 and its supplements. The second section of the eleventh clause (Purdon's Digest, pl. 406), defines the granting of the franchise for " the manufacture and supply of gas, or the supply of light or heat to the public by any other means." The 34th section provides as follows: " Companies incorporated under the provisions of this statute for the supply of water to the public, or for the manufacture and supply of gas, or the supply of light or heat to the public by any other means shall, unless otherwise provided by this act, from the date of the letters patent creating the same, have the powers and be governed, managed and controlled as follows:

" Clause 1. Where any such company shall be incorporated as a gas company, or company for the supply of heat or light to the public, it shall have authority to supply with gas light the borough, town, city or district where it may be located, and such persons, partnerships and corporations residing therein or adjacent thereto as may desire the same at such price as may be agreed upon and also to make, erect and maintain therein the necessary buildings, machinery and apparatus for manufacturing gas, heat or light from coal or other material, and distributing the same," with the right to enter upon the streets and lay pipe, etc.: Emerson v. Commonwealth, 108 Pa. 124.

What was the intendment of this section of the act? The application for the charter of the gas company says that the corporation was formed for the purpose of manufacturing and supplying illuminating and heating gas to the public in the city of Lancaster. This is, in effect, in our opinion, a charter to

furnish heat as well as to furnish light to citizens of this place. The furnishing of light contemplates more than the supply of illuminating gas; so, also, the furnishing of heat more than the furnishing of heating gas. The purpose of the grant necessarily contemplates a contrivance for the distribution of heat. In order to distribute heating gas there are required not only pipes for the conveying of gas, but, also, in our opinion, all other necessary appliances and fixtures for its reception and use by the patrons of the company. Gas stoves and gas heaters, therefore, are indispensable to the use of heating gas, and, therefore, are not foreign to or inconsistent with the objects for which the company was incorporated. We might as well contend that the appliance of a gas burner, which is absolutely necessary for the creating of light from illuminating gas, is foreign to and inconsistent with the objects for which the company was incorporated.

Judge ENDLICH in his excellent work on the Interpretation of Statutes, from which we have already quoted, gives us the principle, which we think applicable to this case, in these words:

" When powers, privileges or property are granted by statute, everything indispensable to their exercise or enjoyment is impliedly granted also, as it would be in a grant between private persons." And farther on he adds: "Even when a corporation is created with certain specifically enumerated powers, it possesses, in addition, by implication, all such as are necessarily incident to those specified, or essential to the expressed purposes and objects of the corporate existence. 'In this country all corporations whether public or private, derive their powers from legislative grant, and can do no act for which authority is not expressly given or may not be reasonably inferred. But, if we were to say that they can do nothing for which a warrant could not be found in the language of their charters, we should deny them in some cases the power of self-preservation, as well as many of the means necessary to effect the essential objects of their incorporation. And, therefore, it has been an established principle in the law of corporations that they may exercise all the powers within the fair intent and purpose of their creation, which are reasonably proper to effect the powers expressly granted. Nor should anything that is fairly incidental to those things which the legislature has authorized be held ultra vires,

unless expressly prohibited. Thus, it has been decided, that
e. g. the grant to a municipality of power to 'prevent and ex-
tinguish fires,' granted, by implication, the power to erect a fire-
engine house; of power to ' make police regulations or needful
by-laws,' a power to purchase fire-engines; of power to contract
' for lighting ' streets, a power to acquire street fixtures, includ-
ing gas pipes and lamp-posts for that purpose; and a grant of
power to a railroad company to purchase land in order to pro-
cure stone and other material necessary for the construction of
its road, a grant of power to purchase land in order to get cross-
ties and firewood.   Indeed, it may be generally said, that, when-
ever a power is given by statute, everything necessary to make
it effectual, everything essential to the exercise of it is given
by implication: " Endlich on the Interpretation of Statutes,
sec. 418.

We hold, therefore, that the Gas Company had legal authority
to purchase the right to the use of the Backus heater as a part of
its franchise.   There was no contention at the argument of this
case that the Gas Company did not follow the act of assembly
in its proceedings to increase its capital stock and bonded in-
debtedness.   The plaintiff simply denies that the increase was
for value received, or in furtherance of the real interests of
the company.   In this respect we do not agree with him.   The
increase, in our opinion, was not only regularly and lawfully
made, but it was made for a valuable consideration, and the
effect has been without any prejudice to any of the rights of
the plaintiff or to any interest of the Gas Company.   It can-
not be questioned that the Gas Company had a legal right to
increase the capital stock and bonded indebtedness of the com-
pany either for money or for labor done or for property actually
received: 2 Thompson's Commentaries on the Law of Corpora-
tions, sec. 1604, et sequitur; act of April 29, 1874, relating to
corporations; Purd. Dig. 417, pl. 68.

A corporation may take in payment of its shares any property
which it may lawfully purchase.   Such a transaction is not ultra
vires or void, but is valid and binding upon the original share-
takers and upon the corporation, unless rescinded or set aside
for fraud.   While such a contract stands unimpeached for fraud
or otherwise, the courts, even where the rights of creditors are
involved, will treat that as payment which the parties have

agreed should be payment: 2 Thompson's Commentaries, sec. 1642.

### DECREE.

And now, April 5, 1897, it is ordered, adjudged and decreed, that the bill of R. A. Malone, plaintiff, against the Lancaster Gas Light and Fuel Company, and John I. Hartman, P. T. Watt, H. S. Williamson, John A. Coyle, J. Gust. Zook, J. D. Skiles, J. Fred. Sener, N. M. Woods, D. McMullen, H. M. North, J. C. Hager, W. U. Hensel, P. B. Shaw and J. H. Baumgardner, directors and stockholders of the said corporation, defendants, be dismissed, and that the costs of the said proceeding be paid by the plaintiff.

*Error assigned* was decree dismissing bill.

*John E. Malone* and *George Nauman*, for appellant.—Whatever right the company had, it derived from its charter granted under the act of April 29, 1874, relating to corporations, and its supplements. The charter was for gas, not for light or heat. Gas is not heat, it is fuel which may be converted into heat by combustion. When the gas is delivered to the consumer it is still gas only. It is not heat. If the consumer does not produce combustion, no heat is obtained, and if he does produce it, the act of doing so is his act : Emerson v. Com., 108 Pa. 111.

The court was clearly wrong in holding that the Gas Company could furnish light and heat as well as gas to the public, and this error caused the court to fall into an equally grave error in holding that these Backus appliances were necessary for the distribution of heat by the Gas Company, and hence formed a part of the Gas Company's distributing system. If the terms of a charter could be so extended by implication a company such as this could certainly manufacture these appliances, could manufacture any portion of its plant and sell, not only chandeliers, gas fixtures and Backus appliances, but whatever entered into and formed a portion of its plant.

*W. U. Hensel*, of *Brown & Hensel*, and *H. M. North*, with them *D. McMullen* and *John A. Coyle*, for appellee.—The application for the charter of the Gas Company says that it is formed for the purpose of manufacturing and supplying illuminating and heating gas to the public in the city of Lancaster.

Thus incorporated, it has all necessary and implied powers for illuminating and heating public and private places with gas: Emerson v. Com., 108 Pa. 123; Endlich on the Interpretation of Statutes, sec. 418.

To justify the finding of fraud, there must be either an actual fraudulent intent or such reckless conduct as would indicate, without explanation, an intent to defraud: Carr v. Lefevre, 27 Pa. 413; Peck v. Coalfield Coal Co., 11 Ill. App. 88; 1 Spelling on Extraordinary Relief, sec. 736; Converse v. Hood, 149 Mass. 476.

The property, appliances and rights here purchased, were brought strictly within the powers of the corporation defendant; and its act in issuing bonds and stocks to pay for them was not ultra vires: Thompson's Commentaries on the Law of Corporations, sec. 5642; Bridgeport v. Housatonic R. R., 15 Conn. 475; Madison Plank Road Co. v. Watertown Plank Road Co., 5 Wis. 173; Green's Brice's Ultra Vires, 94; Atty. General v. Cambridge Consumers Gas Co., L. R. 6 Eq. 282; Lyndeborough Glass Co. v. Mass. Glass Co., 111 Mass. 315; Brown v. Winnisimmet Co., 11 Allen, 334; Flanagan v. G. W. Ry. Co., L. R. 7 Eq. 116; Holmes v. Eastern Counties Ry. Co., 3 K. & J. 675.

A corporation cannot be restrained at the motion of one of its stockholders from doing what is in direct furtherance of the object of its creation, and is for the benefit of all the stockholders as such, though it may injure the complainant in another character: Ware v. Grand Junction Water Works Co., 2 Russ. & M. 470; Sparhawk v. Union Pass. Ry., 54 Pa. 401; High on Injunctions, sec. 22; Bispham's Equity (4th ed.), sec. 9, p. 14.

OPINION BY MR. JUSTICE MITCHELL, July 15, 1897:

There is very little contest in this case over the facts or the law, the real controversy turning on the inferences to be drawn from the facts proved. It is a stockholder's bill to enjoin the issue of new stock and the increase of the corporation's bonded indebtedness, upon two grounds, first, that the increase is not in good faith for the purposes and in the interest of the corporation, but in pursuit of a scheme to acquire control of the corporation and run it in the interest of a rival; and secondly, that

the new debt is to be created for the purchase of certain patent appliances, not for the manufacture or distribution of gas, but for its consumption, the dealing in which appliances is not within the company's charter purposes.

It is beyond dispute that the increase of the stock and the bonded debt was duly authorized by the stockholders under all the formal requirements of the law, but plaintiff charges, on the first branch of the case, that the increase was procured fraudulently by the defendants, other than the Gas Company, who being stockholders, owners and directors in the Edison Company, a rival electric light and heat company, acting through their agent, Shaw, bought up a majority of the shares in the Citizens' and also in the Lancaster Company, and having thus obtained control of the latter, issued the new stock and bonds nominally to buy the Backus patent heating apparatus, but in reality to raise money to pay for the stock of the Citizens' Company, previously secured on options, and intended to be merged in the Edison for the profit of the latter. Of course, the burden of proof of such charge was upon the plaintiff, and it is sufficient to say that we agree with the learned court below that there was no evidence which in any degree sustained it. The agency of Shaw for the other defendants was affirmatively disproved both by him and them, and it was shown that ten of the fourteen defendants were not stockholders, owners or directors of the rival company, the Edison, at the time Shaw acquired the control of the stock of the Lancaster Company, charged to be in the interest of the Edison. On this branch the complainant's case entirely failed of proof.

The second branch of the case raises a mixed question of law and fact, namely, the authority of the Lancaster Gas Company to purchase the right to use and deal in the steam heater, radiating mantel and gas consuming appliances covered by the Backus patents. It is argued for plaintiff that the charter purpose of the Gas Company is limited by the words "manufacturing and supplying illuminating and heating gas," and that nothing can be included which is not a necessary part or appliance for manufacturing or supplying. This is too narrow and literal a construction, and overlooks the fundamental object of the corporation, the manufacture and supply of gas to customers for profit. It would be of no use to manufacture gas if there

were not customers to buy, and hence the company may fairly supply not only the gas itself, but incidentally such appliances and conveniences as will induce new customers to use gas or old ones to use more. This is a legitimate mode of extending the company's business, in direct furtherance of its charter object. In considering such questions, much weight must be allowed to the judgment of the parties most interested, the officers and stockholders of the corporation itself, and while they will not be permitted, as against the commonwealth or a dissenting stockholder, to go outside of their legitimate corporate business, yet where the act questioned is of a nature to be fairly considered incidental or auxiliary to such business, it will not be unlawful, because not within the literal terms of the corporate grant.

This is the general rule even where corporate privileges are most strictly construed. " Corporations may transact, in addition to their main undertaking, all such subordinate and connected matters as are, if not essential, at least very convenient to the due prosecution of the former:" Green's Brice's Ultra Vires (2d ed.), ch. 3, sec. 2, p. 86. The illustration given by Mr. Brice is that railway companies may erect refreshment rooms or book stalls, and "adopt other similar measures for both providing for the comfort of their customers and adding to their own receipts." The American illustrations in the same line, which have revolutionized modern travel will occur to everyone. In Brown v. Winnisimmet Co., 11 Allen, 326, it was held that the contract of a ferry company to charter one of its boats for temporary use in another business was valid. Many illustrations are suggested in the opinion of BIGELOW, C. J., who said, "We know of no rule or principle by which an act creating a corporation for certain specific objects, or to carry on a particular trade or business, is to be strictly construed as prohibitory of all other dealings or transactions not coming within the exact scope of those designated. Undoubtedly the main business of a corporation is to be confined to that class of operations which properly appertain to the general purposes for which its charter was granted. But it may also enter into contracts and engage in transactions which are incidental or auxiliary to its main business, or which may become necessary, expedient or profitable in the care and manage-

ment of the property which it is authorized to hold." See also Lyndeborough Glass Co. v. Mass. Glass Co., 111 Mass. 315. And in our own case of Watts's Appeal, 78 Pa. 370, a land company's charter purpose was to sell a large tract of land, but it was authorized inter alia "to aid in the development of the minerals and other materials," and also "to promote the clearing and settlement of the country." The directors, among other things, built sawmills and a hotel. It was held that their acts were not ultra vires, GORDON, J., saying (page 392) "We know of no other material upon these lands more abundant or more obviously requiring development than the timber. Neither can we conceive of anything better calculated to develop this kind of materials than sawmills. So we regard a hotel of some kind in so large a territory of wild lands, as not only a convenience adding greatly to the settlement of the country, but a necessity."

In the present case the stockholders of the Gas Company by an almost unanimous vote, decided that the purchase of the Backus patents was to the advantage of the company's business as a manufacturer and distributor of gas, and the court below has found as a matter of fact that they were right. We cannot say as matter of law that they were wrong.

Decree affirmed with costs.