176 CITIZENS ELEC. I. CO. *v.* LACK. & W. V. R. R. CO., Appel.

Syllabus—Statement of Facts. [255 Pa.

# Citizens Electric Illuminating Company *v.* Lackawanna and Wyoming Valley Railroad Company, Appellant.

*Corporations—Railroads—Furnishing of electric power—Acts of February 19, 1849, P. L. 79, and March 19, 1903, P. L. 34—Ultra vires—Electric companies—Territorial rights—Bill in equity—Injunction.*

1. A corporation has no natural rights, such as an individual or partnership, and if a power is claimed for it, the words giving the power, or from which it is necessarily implied, must be found in the charter or the power does not exist. Where the provision of the charter is doubtful the power does not exist.

2. An implied power is such as is necessary to enable the corporation to carry out a power expressly granted it so as to effect the purpose for which the corporation was created.

3. A railroad company is not given the right either by the Act of February 19, 1849, P. L. 79, or the Act of March 19, 1903, P. L. 34, to supply an independent coal company with electric current from its plant sufficient for the latter's mining operations, and will be enjoined from so doing at the instance of an electric company possessing the exclusive privilege, as against other electric companies, of furnishing electricity in the township in which the coal company operates.

*Statutes—Construction—Intention.*

4. Every statute is to be construed with reference to the object intended to be accomplished by it even to the extent of restraining the meaning of general terms where found necessary in order to interpret clearly the spirit and reason of the statute.

5. A thing which is within the letter of a statute is not within the statute unless it be within the intention of its makers.

Argued April 13, 1916. Appeal, No. 116, Jan. T., 1916, by defendant, from decree of C. P. Luzerne Co., Jan. T., 1916, No. 4, in equity, granting injunction in case of Citizens Electric Illuminating Company v. Lackawanna & Wyoming Valley Railroad Company. Before POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Bill in equity by an electric company to enjoin a railroad company from furnishing electricity for purposes other than its own use in Jenkins Township, Luzerne County. Before STRAUSS, J.

The facts appear by the opinion of the Supreme Court.

The lower court granted the injunction prayed for. Defendant appealed.

*Error assigned,* among others, was the decree of the court..

*H. B. Gill* and *William I. Schaffer,* with them *F. W. Wheaton* and *W. B. Linn,* for appellant.—Plaintiff has no standing to maintain its bill: Act of June 19, 1871, P. L. 1360; Penna. R. R. Co. v. Greensburg, Jeannette & Pittsburgh St. Ry. Co., 176 Pa. 559; Coatesville & Downingtown St. Ry. Co. v. Uwchlan St. Ry. Co., 18 Pa. Superior Ct. 524; North Penna. R. R. Co., et al., v. Inland Traction Co., 205 Pa. 579; Bland v. Tipton Water Co., 222 Pa. 285; Vinton Colliery Co. v. Blacklick & Yellow Creek R. R. Co., 226 Pa. 135; Western N. Y. & Penna. Ry. Co. v. Buffalo, Rochester & Pittsburgh Ry. Co., 193 Pa. 127.

The defendant has a legal right to sell the power proposed to be sold by it: Section 6, Article XVI, Constitution of Pennsylvania; Malone v. Lancaster Gas Light & Fuel Co., 182 Pa. 309; Brown, et al., v. Winnisimmet Co., 93 Mass. 326; Commonwealth, ex rel., Todd, v. Independent Brewing Co., 14 Dauphin 157; Shaaber's App., 2 Monoghan (Pa.) 435; Jacksonville, Mayport, Pablo Ry. & Nav. Co. v. Hooper, 160 U. S. 514; City of New York v. Interborough Rapid Transit Co., 125 N. Y. App. Div. 437.

*Benjamin R. Jones,* for appellee.—Defendant has no right to sell electricity under the general railroad Act of Feb. 19, 1849, P. L. 79: Commonwealth v. Erie & North-East R. R. Co., 27 Pa. 339; Barker v. Hartman Steel

178 CITIZENS ELEC. I. CO. *v.* LACK. & W. V. R. R. CO., Appel.

Arguments—Opinion of the Court. [255 Pa.

Co., 129 Pa. 551; Del., Lack. & Western R. R. Co. v. Welser, 233 Pa. 154.

Defendant has no right to sell electricity under authority of the Act of March 19, 1903, P. L. 34: Philadelphia & Reading Coal & Iron Co.'s Petition, 200 Pa. 352; Fraim v. Lancaster County, 171 Pa. 436; Duquesne Light Co. v. City of Pittsburgh, 251 Pa. 557; Hey v. Springfield Water Co., 207 Pa. 38; Young v. York Haven Electric Transmission Co., et al., 15 Pa. D. R. 843.

The plaintiff has a full standing to complain of sales of electricity by defendant: Act of June 19, 1871; P. L. 1360; Citizens' Electric Illuminating Co. v. Lack. & Wyoming Val. Power Co., 18 Luz. Leg. Reg. 77; Commonwealth v. Pittsburgh & Connellsville R. R. Co., 24 Pa. 159; Bly v. White Deer Mountain Water Co., 197 Pa. 80; Blauch v. Johnstown Water Co., 247 Pa. 71; Myersdale & Salisburg St. Ry. Co. v. Penna. & Maryland St. Ry. Co., 219 Pa. 558.

OPINION BY MR. JUSTICE STEWART, October 2, 1916:

An obvious distinction between the present case and that of the Citizens' Electric Illuminating Company v. The Lackawanna and Wyoming Valley Power Company, 255 Pa. 145, lies in the fact that there the controversy was between two electric companies, while here it is between an electric company—the same that was complainant in that case—and a railroad company. The distinction denotes a substantial difference which makes irrelevant here some of the questions that there arose and were more or less governing, and requires here a consideration and application of rules and principles which there were foreign to the subject with which we were dealing. First of all, let it be clearly understood what it is that here is the subject of plaintiff's complaint. The plaintiff is a chartered electric company, having for its field of operation the Township of Jenkins in Luzerne County, including the City of Pittston. As against every other electric company not having by its charter a

right to operate in Jenkins Township, it possesses an exclusive privilege. The defendant company is not an electric company, but a railroad company, chartered exclusively for the transportation of passengers and freight. It owns and operates a railroad extending from the City of Scranton through Jenkins Township to Wilkes-Barre, using electricity as its motive power, which it develops at its electric plant in the City of Scranton. The Pennsylvania Coal Company, a corporation not allied in any way with the defendant company, owns and operates certain coal mines in Jenkins Township, and employs electric current in its works at these several mines. The defendant company has engaged with this coal company to supply it with electric current from its plant in the City of Scranton sufficient for its mining operations. It is of this proposed action on the part of defendant company, now restrained by the injunction, that the plaintiff complains, on the ground that it would be an invasion of and interference with the franchise or power it enjoys in Jenkins Township under its charter, by a company having no corresponding franchise. It is not the right of the defendant company, under its charter, to produce electric current and use the same for its own purposes wherever these may require it, even in Jenkins Township, that is challenged, but its right to sell the electric current it produces, or any part of it, to another corporation not allied to it in any way using electricity for other than railroad purposes, and operating in territory which the complaining company was chartered to supply with light, heat and power. It is for the appellant to make good its claim of right to do the thing complained of; and this it can do only as it can point to an express or implied authority contained in its charter. It is conceded that a corporation has no natural rights, such as an individual or partnership has, and if a power is claimed for it, the words giving the power, or from which it is necessarily implied, must be found in the charter, or it does not exist. "That which a company

180 CITIZENS ELEC. I. CO. *v.* LACK. & W. V. R. R. CO., Appel.

Opinion of the Court.                    [255 Pa.

is authorized to do by its charter of incorporation, it may do; beyond that, all its acts are illegal. And the power must be given in plain words, or by necessary implication. All powers not given in this direct or unmistakable manner, are withheld. If you assert that a corporation has certain privileges, show us the words of the legislature conferring them. Failing in this, you must give up your claim. A doubtful charter does not exist; because whatever is doubtful is decisively certain against the corporation": Com. v. Erie & North-East R. R. Co., 27 Pa. 339, 351. Appellant neither pleads exemption from this rule, nor seeks to avoid its stringency, but insists that it has both express and necessarily implied authority to do the thing complained of. We do not think it necessary to follow the argument advanced to show an express authority for the appellant company and point out at length where it is unsatisfactory and unconvincing. The reliance is upon the general railroad law of Feb. 19, 1849, P. L. 79, and the Act of March 19, 1903, P. L. 34. It is sufficient to say with respect to the former that it can be construed as granting authority to railroad companies to sell motive power, not only by doing violence to the plain meaning of the words there employed, but their technical meaning,—if indeed they can be said to have technical meaning as distinguishable from ordinary parlance—as well. The transaction permitted by the act may be a bailment or a hiring for which compensation may be demanded for the use of the thing and the labor and service about it, but to speak of it as a sale is a misuse of language too plain to be equivocal. With respect to the other statute, the Act of March 19, 1903, it may be conceded that appellant and the Pennsylvania Coal Company both fall within the general classification of corporations entitled to exercise the powers and privileges conferred by the act; and further, that to such corporations in unmistakable language is given the power to contract with each other for the sale and purchase of electrical current, precisely what they are here

restrained from doing. Were our inquiry to extend no further than to ascertain whether the general terms employed in the enacting clause are broad enough, in the sense in which they are originally understood, to embrace the right here contended for, and this is appellant's contention, the case would undoubtedly rest with appellant. But the rule which appellant invokes is always in subordination to another and fundamental rule that requires every statute to be construed with reference to the object intended to be accomplished by it, a rule which governs even to the extent of restraining the meaning of general terms where found necessary in order to interpret clearly the spirit and reason of the statute. Confining then our attention to the enacting clause, which reads: "Be it enacted, that it shall and may be lawful for corporations, for what purpose soever formed, and lawfully using electrical current, within this Commonwealth, to enter into contracts with each other for the use of the same poles, wires and conduits, or for the lease and operation of each others' systems, upon such terms and conditions as they may agree upon." What are we to learn therefrom as to the object intended to be accomplished? What was the end in view in giving to corporations using electric current the enlarged powers enumerated? These were not ends in themselves, but manifestly are associated in the act as proper correlatives for the accomplishment of a distinct purpose. Obviously there is one thing that the grant of such powers to such corporations would, if employed, be certain to accomplish by way of prevention, that is the multiplication of lines of poles and conduits and systems of wires for conducting electric current along the various roads and streets of the Commonwealth. Can any other be suggested? We know of none. Was this a subject challenging legislative concern? Was there an existing mischief for the correction of which such legislation would be appropriate? That the multiplication of lines of poles, conduits and systems of wires for conducting cur-

rents of electricity along the public roads and streets had become a source of annoyance and danger to the public, was a matter of common knowledge, and the appropriateness of the act as an available remedy is too apparent to be questioned. Whatever other purpose may be derived from the enacting clause, if it be admitted, as we think it must, that the one purpose we have suggested can at least be reasonably derived from the language used, then resort may be had to the title and preamble of the acts to get whatever light is shed from these on the question of legislative purpose. Here the title and preamble expressly declare the one purpose of the act to be the prevention of a multiplication of poles, wires and conduits for electrical purposes by corporations manufacturing or using electrical current along the roads and streets of the Commonwealth, which multiplication is denounced as an annoyance and danger to the public and an interference with the proper exercise of municipal functions. It cannot be pretended, and it is not, that the contract assailed was entered into to the end that the multiplication of these things might be avoided. The prime object on the part of appellant was to sell electric current to the Pennsylvania Coal Company, something which it had no power to do apart from the Act of March 19, 1903, and it seeks now to derive the power to do this from an act whose sole purpose was what we have above indicated, on the ground that it can furnish the power without multiplying these sources of danger to the public, or, stated in the broadest way, that it can furnish the electric current to the coal company by the use of fewer poles and wires than would be required if that company were to derive its current from any other source of supply. We are clearly of opinion that to allow any such construction of the act would be not only to disregard its one clearly expressed purpose, but to extend it to purposes which could not have been within legislative contemplation. Every statute is to be construed with reference to the object intended to be ac-

complished, and a rule equally in point is that a thing which is within the letter of a statute is not within the statute unless it be within the intention of its makers.

Having then no expressly granted authority to do the thing complained of, has appellant implied authority? If it has, that too must be derived from the same source, the several statutes giving it corporate existence and defining its sphere of operation; and it can only be such power as is necessary to enable it to carry out the power expressly granted it so as to effect the purpose for which the corporation was created. This doctrine is too familiar to call for citation of authority in its support. Such power is sometimes spoken of as an incidental power, and this is defined to be one that is directly and immediately appropriate to the execution of the specific power granted, and not one that has merely some slight or remote relation to it. It is in this sense that Chief Justice MITCHELL uses the term in Malone v. Lancaster Gas Light & Fuel Co., 182 Pa. 309, 322, when he uses this language: "Where the act questioned is of a nature fairly considered incidental or auxiliary to such business, it will not be unlawful business because not within the literal terms of the grant." We have given careful consideration to this and the other cases cited by counsel for appellant as showing the disposition on the part of the courts to relax the rule of restriction as we have above quoted it. We cannot burden this opinion with separate reference to each. Of this we are entirely satisfied, that not one of them affords warrant for relaxation to the extent here insisted upon. The only case cited from our own reports is the one we have above referred to, and in that case the power contended for by the corporation was upheld solely and distinctly on the ground that it was "in direct furtherance of its charter object," although not within the literal terms of the corporate grant. The sole purpose for which the appellant company was given corporate existence, was for the construction, maintenance and operation of a railroad. As

it had a right to do, it adopted electricity for its motive power, and, as it had a further right to do, it established a plant of its own for the development of such power. This plant· consists of three units, one capable of producing 2,500 kilowatts of energy, and two capable each of producing 1,250 kilowatts. A single one of these minor units is inadequate to meet the requirements of the railroad. Operated together they produce an excess. Like excess would, of course, be produced were these smaller units to remain at rest and the larger one only employed. One or other is superfluous. With a view to utilize this excess and make it yield a return, appellant proposes to supply a corporation not in any way allied to it, with sufficient power out of this excess to answer its purposes. The right of a corporation to sell and dispose of surplus material on hand, not required in the conduct of its chartered business, is not questioned. The attempted analogy between the cases cited by appellant's counsel and the present one fails right here. It is a mistake to speak of the electric current that appellant proposes to sell to the coal company as surplus current that the company has on hand and for which it has no use. That current has never been developed, and can be developed only as appellant employs its surplus machinery to that end. It is the machinery that constitutes the surplus, and not the electric current. This, then, is the actual situation: appellant, instead of selling or disposing by exchange or otherwise its surplus machinery, which it would have a right to do, seeks to find profitable employment for it by engaging in other business than that for which it was chartered, a business belonging exclusively to power companies. If it has the right to so deal with surplus energy developed by one-half its machinery, there can be no reason why it could not employ its entire plant in developing current and disposing of the multiplied surplus that would then result in the same way. However profitable and advantageous such dealings might prove to a corporation, con-

siderations such as these furnish no basis for implying a power not expressed in the charter, especially a power so remote as this would be from the purpose for which the corporation was formed. We are clearly of opinion that the appellant company, in contracting to furnish the coal company with electric current, was exceeding its corporate powers. So manifest is this that we deem it unnecessary to discuss the constitutional provisions which expressly prohibit it from engaging in other business than that for which it was expressly chartered. Being without legal authority to do the thing complained of, its invasion of the territory in which the plaintiff has, as against it, an exclusive privilege, would be such an interference with the plaintiff's franchise as gives the plaintiff standing to complain. The injunction was properly granted; the assignments of error are overruled and the decree is affirmed.