[J-132-2016] [MO: Baer, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| FRANK ZAMPOGNA, | : | No. 40 EAP 2014 |
| | : | |
| Appellee | : | Appeal from the Order of |
| | : | Commonwealth Court entered on |
| | : | 11/27/2013 at No. 1322 CD 2012, |
| v. | : | vacating and remanding the Order |
| | : | entered on 01/24/2012 in the Court of |
| | : | Common Pleas, Civil Division, |
| LAW ENFORCEMENT HEALTH | : | Philadelphia County at No. 03927 |
| BENEFITS, INC., | : | September Term, 2010. |
| | : | |
| Appellant | : | ARGUED:  March 10, 2016 |
| | | REARGUED:  March 8, 2016 |
| | | RESUBMITTED:  October 20, 2016 |

**CONCURRING OPINION**

**JUSTICE WECHT**                                         **DECIDED:  November 22, 2016**

I agree with the result reached by the learned majority, and wholeheartedly endorse its thorough account of the evolution of Pennsylvania's for-profit and nonprofit corporation law in our Commonwealth.  Indeed, I join all of the majority's analysis except aspects of its account of the test courts must apply to determine whether a given action by a nonprofit corporation is commensurate with its stated purpose.

The majority would apply the following test:

[W]e find that a nonprofit corporation's action is authorized when:  1) the action is not prohibited by the [Nonprofit Corporation Law of 1988 ("NCL"), 15 Pa.C.S. §§ 5101, *et seq.*] or the corporation's [Articles of Incorporation ("Articles")]; and 2) the action is not clearly unrelated to the corporation's stated purpose.

Maj. Op. at 19.  I agree that the applicable test of the scope of board authority involves two components, which one might call the proscription test and the practical test,

respectively.[1]  The first pertains to express restraints, and I agree with the majority that no provision of the NCL or the Articles expressly precluded Law Enforcement Health Benefits ("LEHB") from endorsing a candidate for president of the Fraternal Order of Police ("FOP").  The second inquiry concerns *implicit* restrictions upon a nonprofit corporation's authority.  It is in the majority's formulation of this, the practical test, that I find fault.

Rather than employ a virtually unbounded "clearly unrelated" test, I would employ a practical test that inquires whether the challenged action would be characterized by a reasonable person as "incidental" to the corporation's statement of purpose.  In this case, the Articles expressly confer such "incidental" authority.  Moreover, as Justice Todd explains in her Concurring Opinion, such incidental power long has been recognized as inherent in a corporate charter that contains a purpose requirement, because it would be inconsistent with the law's requirement of a "brief" statement of purpose to indulge the fiction that all ancillary actions that such a purpose would entail must be enumerated at length and exhaustively.  See Justice Todd's Conc. Op. at 5-6 (citing Citizens' Elec. Illuminating Co. v. Lackawanna & W.V. R. Co., 99 A. 465, 467 (Pa. 1916)).

LEHB's endorsement of a candidate for union office in this case plainly was incidental to LEHB's corporate purpose, for the reasons set forth by the majority and embraced by Justice Todd.  See Maj. Op. at 20 (observing that, under circumstances of this case, the president of the FOP directly affects "LEHB's revenue source and its very existence," implicating "LEHB's ability to function effectively"); Justice Todd's Conc. Op.

---

[1]     I agree with Justice Todd's explication of the two-stage inquiry.  See Justice Todd's Conc. Op. at 4-5.  My commentary is directed exclusively toward the threshold question of authority, which, as set forth herein, I divide into the two subordinate inquiries that I define as the proscription and practical tests.

at 6-7.[2]  Indeed, taking an interest in the FOP election was about as close to a direct function of its stated purpose as something incidental can be without crossing that line.

While I would apply a somewhat more restrictive test than the majority, I would not place the burden upon the corporation of proving that a challenged action is incidental. The burden should lie with the challenger to prove that a given action is not incidental to the stated purpose, employing a reasonable person standard to that assessment.  While this standard might be more permissive than Justice Todd's approach, she and I agree that requiring proof that a given action is "clearly unrelated" is tantamount to writing nonprofit corporations a blank check that all but entirely confounds the General Assembly's determination that nonprofit corporations must identify a specific corporate purpose.  To fail such a test, a nonprofit corporation would have to undertake something having literally nothing to do with its purpose, undermining the very notion of a defined corporate purpose.  Thus, LEHB presumably would be

_____

[2]  The majority discusses briefly the Commonwealth Court's determination that the "incidental" power conferred by the Articles enabled the exercise only of powers "directly and immediately appropriate to the execution of the specific power granted, . . . not one that has merely some slight or remote relation to it," which is the same Citizens Electric standard that Justice Todd would apply to determine the scope of incidental authority. See Maj. Op. at 7 (quoting the Commonwealth Court's quotation of Citizens' Elec., supra); Justice Todd's Conc. Op. at 5-6.  Citizens' Electric establishes that some degree of "incidental" power may be inferred even absent a specific grant of such authority by the business law or a corporation's articles of incorporation.  Contemporarily, the NCL itself supports such an inference in its grant of authority to a corporation "[t]o have and exercise all of the powers and means appropriate to effect the purpose or purposes for which the corporation is incorporated."  15 Pa.C.S. § 5502(a)(18).  Moreover, especially when incidental authority is expressly granted, I would not interpret it as narrowly as Citizens Electric does, because the Citizens Electric standard confounds Subsection 5502(a)(18)'s more permissive grant of authority.  Instead, I would utilize the common definition of incidental, which, in keeping with the NCL, is considerably more expansive. See, e.g., American Heritage College Dictionary 687 (3d ed. 1993) (defining "incidental" as "1. Occurring or likely to occur as an unpredictable or minor accompaniment.  2. Of a minor, casual, or subordinate nature").

restrained from entering into the garment business, but might be found to act within its authority if it spent considerable sums to oppose enactment of the Patient Protection and Affordable Care Act.[3] It seems to me that any test is too permissive that would leave the door open for LEHB to undertake something as remote as the latter hypothetical action is from managing the procurement and administration of healthcare insurance for its members.

The difficulty with formulating a test of incidental authority, and the reason it requires the flexibility that an objective reasonable person test provides, is that, without a more detailed set of parameters to guide the formulation of a brief statement of purpose, a test as rigid as Citizens Electric's undermines the breadth of authority the NCL manifestly seeks to confer. See 15 Pa.C.S. § 5502(a)(18), *supra* n.2. . For these reasons, I would employ a reasonable person standard, pursuant to which a nonprofit corporation acts consistently with its stated purpose and articles of incorporation when a reasonable person would conclude that the challenged action directly or incidentally serves the corporation's stated purpose.

Turning to this case, while my proposal entails a more probing inquiry than the majority applies, Frank Zampogna, as the challenger herein, simply did not prove by a preponderance of the evidence that a reasonable person would not conclude that LEHB's action was squarely incidental to its stated purpose for the very reasons stated by the majority. See Maj. Op. at 20. Providing health insurance costs money. The FOP presidency bears directly upon negotiations with the City of Philadelphia to seek funding to provide such benefits. Moreover, the FOP president, with power to appoint

---

[3]     See Pub.L. No. 111-148, 124 Stat. 119 (2010), *amended by* Health Care and Education Reconciliation Act of 2010, Pub.L. No. 111-152, 124 Stat. 1029, *codified at* 42 U.S.C. §§ 18001, *et seq.*

four of five members of the Joint Trust Board, which in turn has the power to appoint and replace the administrator of benefits, holds LEHB's very existence in the palm of his hand. Consequently, LEHB had every right and every reason to concern itself with the FOP presidential election, regardless of whether Mr. Zampogna impugned LEHB's past performance in its administrative role.

For the foregoing reasons, the Commonwealth Court erred in reversing the trial court's conclusion to this effect. Accordingly, I agree with the majority that the Commonwealth Court's order must be reversed.