[J-132-2016] [MO: Baer, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT**

| | | |
|---|---|---|
| FRANK ZAMPOGNA, | : | No. 40 EAP 2014 |
| | : | |
| Appellee | : | Appeal from the Order of |
| | : | Commonwealth Court entered on |
| | : | November 27, 2013 at No. 1322 CD |
| v. | : | 2012, vacating and remanding the |
| | : | Order of the Court of Common Pleas of |
| | : | Philadelphia County, Civil Division, |
| LAW ENFORCEMENT HEALTH | : | entered on January 24, 2012 at No. |
| BENEFITS, INC., | : | 03927 September Term, 2010 |
| | : | |
| Appellant | : | ARGUED:  March 10, 2015 |
| | : | REARGUED:  March 8, 2016 |
| | : | RESUBMITTED: October 20, 2016 |

## CONCURRING OPINION

**JUSTICE TODD**                                    **DECIDED:  November 22, 2016**

I agree with the majority's decision to reverse the order of the Commonwealth Court. However, for reasons similar to those articulated by Justice Wecht in his Concurring Opinion, I cannot endorse the highly permissive test advanced by the majority for determining whether a nonprofit corporation's action is consistent with its stated corporate purpose. Rather, I would utilize the test that has existed for nearly a century: whether a nonprofit corporation's action is incidental to its stated purpose — that is, whether the action is "directly and immediately appropriate to the execution of the specific power granted, and not one that has merely some slight or remote relation to it." Citizens' Elec. Illuminating Co. v. Lackawanna & W. V. R. Co., 99 A. 465, 467 (Pa. 1916).  My reasoning follows.

Finding that "the interplay between a nonprofit corporation's corporate purpose and that corporation's authority to take corporate action must be construed in the least restrictive way possible," the majority holds that a nonprofit corporation's action is authorized if: "1) the action is not prohibited by the [Nonprofit Corporation Law ("NCL")] or the corporation's articles; and 2) the action is not clearly unrelated to the corporation's stated purpose." Majority Opinion at 19. While I agree with the first prong of this test, regarding the second, in my view, the majority's approach — permitting all but "clearly unrelated" action — is not grounded in statute, regulation, or case law. Rather, the highly permissive standard the majority employs is based on the majority's assumption that, because the NCL is largely modeled after the Business Corporation Law ("BCL"), and because the BCL gives modern day business corporations a nearly unlimited scope of power, we should treat nonprofit corporations and for-profit corporations as essentially one and the same, and find nearly all actions taken by a nonprofit corporation to be authorized. I respectfully disagree with this view.

While it is true that the NCL and BCL are similar in many respects, including providing both types of corporations with the legal capacity to act as natural persons, compare 15 Pa.C.S. § 5501, with id. § 1501, and authorizing both to engage in other enumerated general powers, compare id. § 5502, with id. § 1502, these statutes differ fundamentally with regard to the significance of a stated corporate purpose in a corporation's articles. Indeed, as the majority aptly notes, unlike the BCL, which permits a for-profit corporation to be incorporated for "any lawful purpose," id. § 1301, the NCL requires a nonprofit corporation to be incorporated for a specified purpose, including or similar to those enumerated by statute, which include "athletic," "charitable," and "educational." Id. §§ 5301(a), 5306(a)(3); 19 Pa. Code § 41.4(b). This emphasis on corporate purpose, which was essentially eliminated for for-profit corporations under the

BCL, is consistent with the differing goals of business and nonprofit corporations: while business corporations ultimately seek to make money for their owners, nonprofit corporations are organized to provide some focused benefit to society, and, as a result, each must include a statement of purpose apprising the public of its aims. Howard L. Oleck & Martha E. Stewart, Nonprofit Corporations, Organizations, & Associations, 496 (6th ed. 1994) (expressing support for requirement of specific statement of corporate purpose with regard to nonprofit corporations because "the public and the organization's own personnel ought to have clearly stated just what their organization is and does, particularly if it is to receive such legal privileges as tax exemption"); see also Johnny Rex Buckles, How Deep Are the Springs of Obedience Norms that Bind the Overseers of Charities?, 62 Cath. U. L. Rev. 913, 936 n. 116 (2013) ("[U]nlike business corporations, whose ultimate objective is to make money, nonprofit corporations are defined by their specific objectives: perpetuation of particular activities are central to the raison d'être of the organization." (internal quotation marks omitted)).

The majority reasons, and I agree, that the legislature's deliberate inclusion of a specified corporate purpose requirement in the NCL — particularly where the BCL contains no such mandate — necessarily signifies that "a nonprofit corporation's actions must be related to its corporate purpose," otherwise, the requirement would be rendered "meaningless." Majority Opinion at 18. Yet, by holding that a nonprofit corporation's actions are authorized so long as they are not "clearly unrelated" to the purpose set forth in the corporation's charter, the majority has essentially authorized a nonprofit corporation to take almost any action desired by its board of directors. As Justice Wecht so astutely observes, the majority's test is "tantamount to writing nonprofit corporations a blank check that all but entirely confounds the General Assembly's determination that nonprofit corporations must identify a specific corporate purpose."

Concurring Opinion (Wecht, J.) at 3. I do not believe that this is the result the legislature intended when it required nonprofit corporations to include a specified purpose in their charters.

Furthermore, although I agree with Justice Wecht to the degree he would find that a nonprofit corporation's actions must be incidental to its corporate purpose, he would apply a "reasonable person" standard to assess such action. I cannot subscribe to this approach either. While Justice Wecht's reasonable person standard might be a better measure of whether a nonprofit corporation's action is consistent with its corporate purpose than the standard advanced by the majority, as with the majority's standard, it lacks a statutory basis. Moreover, as neither party raises a challenge to the burden of proof applied in this case, unlike Justice Wecht, I would not address that issue.

In contrast to the majority (and Justice Wecht's augmented formulation), I see no need to create a new test given the well established test under the incidental powers doctrine, which both parties have agreed applies in this case.[1] It has been an accepted principle from as early as the late 1800s that, in addition to the specific powers listed in a corporation's charter, a corporation could engage in activities which were incidental to its main purpose. See Malone v. Lancaster Gas Light & Fuel Co., 37 A. 392, 393 (Pa. 1987) (holding that purchasing and supplying gas-consuming appliances was incidental to gas company's corporate purpose of manufacturing and supplying illuminating and heating gas); Citizens' Elec., 99 A. at 467 (holding that providing surplus electricity was not incidental to railroad company's corporate purpose of transporting customers and

---

[1] Indeed, as further support for application of the incidental powers doctrine, LEHB's articles of incorporation specifically provide that LEHB may engage in "other proper purposes incidental to" its corporate purpose. Addendum to Articles of Incorporation at 1 (R.R. at 232a).

freight). In assessing whether such activities are incidental, this Court has made clear that, while corporations "may transact, in addition to their main undertaking, all . . . subordinate and connected matters," such actions must be "if not essential, at least very convenient, to the due prosecution of" the corporation's purpose. Malone, 37 A. at 933. In other words, a corporation could engage in an act "that is directly and immediately appropriate to the execution of the specific power granted, and not one that has merely some slight or remote relation to it." Citizens' Elec., 99 A. at 467.[2]

While the incidental powers doctrine has been rendered largely immaterial with respect to modern-day business corporations due to the fact that such corporations are not restricted in the scope of their operations to a specific corporate purpose and, therefore, enjoy a nearly unlimited scope of power, in my view, Malone and Citizens' Elec. are still viable for interpreting the charters of today's nonprofit corporations, which contain a corporate purpose similar to that of traditional business corporations commonplace at the time of those decisions. Thus, rather than evaluating LEHB's endorsement in terms of whether it was "clearly unrelated" to providing health benefits to FOP members, or in terms of whether a "reasonable person" would conclude that the endorsement was consistent with providing such benefits — tests offered by the majority and concurrence, respectively, for which neither party has argued — I would

---

[2] Although Justice Wecht views the Citizens' Elec. standard as inconsistent with the NCL's broad grant of authority in 15 Pa.C.S. § 5502(a)(18), See Concurring Opinion (Wecht, J.) at 3 n.2, I respectfully disagree. In my view, Section 5502(a)(18) is consistent with, and indeed similar to, the formulation of the incidental powers standard articulated in Citizens' Elec., as both standards expressly permit nonprofit corporations to engage in activities related to the nonprofit corporation's stated purpose. Compare Citizens' Elec., 99 A. at 467 (authorizing corporate activity "that is directly and immediately appropriate to the execution of the specific power granted"), with 15 Pa.C.S. § 5502(a)(18) (authorizing nonprofit corporation to take action "appropriate to effect the purpose or purposes for which the corporation is incorporated").

apply Malone and Citizens' Elec. and evaluate whether LEHB's endorsement was directly or immediately appropriate to its stated corporate purpose of providing health and welfare benefits to the FOP members and their families.

Applying that standard to the facts of this case, I would conclude that the endorsement was indeed incidental to LEHB's corporate purpose of providing health and welfare benefits to FOP members. As the majority has explained, the collective bargaining agreement between the FOP and the City of Philadelphia, *inter alia*, created the Joint Trust Board, which is directly responsible for supervising and managing the delivery of the FOP's health and welfare benefits, and is tasked with selecting the entity which will provide health and welfare benefits to active and retired FOP members and their families. Pursuant to the collective bargaining agreement, the FOP president appoints four out of the five individuals who sit on the Joint Trust Board, which, as the majority notes, directly impacts "LEHB's ability to function effectively," and, more specifically, its ability to provide health and welfare benefits to the FOP. Majority Opinion at 20. Thus, I would find that LEHB's endorsement of a candidate for FOP president was "directly and immediately appropriate" to enabling it to provide health and welfare benefits to FOP members and their families. Citizens' Elec., 99 A. at 467. On this basis, I join in the majority's holding that LEHB's actions were authorized.